MARYLAND CASUALTY COMPANY, ETC. *v.* WEISS.

[No. 18,996. Filed March 10, 1959. Rehearing dismissed April 24, 1959.]

482

George *W. Hulbert* and *William I. Marlatt,* both of Gary, for appellant.

*Englander & Brenman* and *Irving I. Brenman,* of counsel, of Gary, for appellee.

GONAS, P. J.—This action was brought by appellee upon an insurance policy ·covering losses of money through burglary of appellee's grocery store. It was consolidated for trial with another action which is not involved here.

It was stipulated at a pre-trial conference that appellee's premises were burglarized within the meaning of the policy on April 11, 1954, and that cash was stolen. It was further stipulated that the only issues to be tried were: (a) The sufficiency of appellee's records as provided for in the policy, from which the amount of the loss could be determined; and (b) the amount of the loss and the amount for which appellant became liable.

.Trial to the court resulted in a judgment for appellee in the sum of $5000.00, the amount of the policy. Appellant's motion for new trial was overruled and such ruling is assigned as error.

Among the grounds of the motion urged here are error in the assessment of the amount of recovery, surprise, and refusal to grant appellant a trial by jury. The argument on these grounds is not supported by any authority and under Rule 2-17 (e) and (f) no question is presented as to them. *Stanley* v. *Gieseking* (1952), 230 Ind. 690, 105 N. E. 2d 171; *Stoner* v. *Howard Sober, Inc.* (1957),

127 Ind. App. 338, 141 N. E. 2d 458; *Vermillion* v. *Gore* (1958), 128 Ind. App. 406, 148 N. E. 2d 851; *Thanos* v. *Fox* (1958), 128 Ind. App. 416, 149 N. E. 2d 315; *White* v. *State* (1958), 238 Ind. 498, 152 N. E. 2d 894.

A further ground of the motion is alleged irregularity in the proceedings of the court, but it is apparent that the only alleged irregularity is in rulings on evidence; which rulings will be discussed with reference to other grounds of the motion. In any event, this is not a proper ground of a motion for new trial under which to present questions as to rulings on the evidence at the trial. Flanagan, Wiltrout and Hamilton, *Indiana Trial and Appellate Practice*, §1812, Comment 1, and cases there cited.

The insurance policy sued upon contains the following provisions:

> "The assured shall keep records in such manner that the company can accurately determine therefrom the amount of the loss."

Appellant argues that appellee's records were not kept in such manner; that they are unintelligible and insufficient.

Appellee introduced in evidence records covering a period of three days, April 9th, 10th and 11th, 1954, the latter date being the date of the burglary. These records are appellee's exhibits 3 to 12, inclusive.

It appears from the evidence that appellee's store had three cash registers used in connection with sales, one being at each check-out counter. The clerk in charge of a register accounted each day for receipts and disbursements on a printed form prepared by the National Cash Register Company and which is designated as a Checkers Daily Report. There was entered on this form the cash register totals of sales with separate totals for groceries, meats and pro-

duce. The cash in the register was counted by the checker and reconciled with the day's sales as shown by the cash register. As money accumulated in the register during the day it was turned in to the office where it was in turn counted by the bookkeeper or head checker to ascertain that the amount corresponded with the checker's figures on the Checkers Daily Report. On the day preceding the burglary three cash registers were in operation. The Checkers Daily Reports from the registers for that day were introduced as appellee's exhibits 3, 4 and 5. On the day of the burglary only two registers were used and the Checkers Daily Reports for that day were introduced as appellee's exhibits 6 and 7.

The Checkers Daily Reports were ordinarily made about an hour before closing time, in order that the employees need not stay after closing time. At closing time the register drawers were placed in a safe and the next morning the clerk counted the money in her drawer to see that it corresponded with the amount taken in, as shown by the cash register, after making out the previous day's daily report.

The information from the Checkers Daily Reports was entered in the store office on what is designated as a daily report sheet. On this form was entered the amount of money on hand at the close of the previous day (referred to as the "starting bank"), the receipts from sales as shown by the Checkers Daily Reports, the amount of cash disbursements during the day, bank deposits, and the money on hand at the close of the day. Appellee's exhibits 10, 11 and 12 are the daily report sheets for the day of the burglary and the two days previous thereto.

Appellant complains that the evidence does not sufficiently disclose how the figure of $9362.34, which was

the "bank" at the beginning of the day of April 11, 1954, was reached. The evidence, however, shows exactly how the figure was arrived at, and that it was verified by an actual count.

Appellee testified that, in addition to store funds taken in the burglary, he had an envelope of personal funds in the safe which was taken, but which are not claimed to be covered by the policy.

At the end of the month the sheets for the month, together with check stubs, were turned over to the appellee's auditor.

One of appellant's witnesses, a certified public accountant, testified that he could tell from appellee's exhibit 12 what appellee lost in the burglary, assuming that the figures thereon were correct.

The trial court necessarily found that appellee kept records in such manner that appellant could accurately determine therefrom the amount of loss. In our opinion, the evidence fully sustains this finding and the decision of the court is not contrary to law. 45 C. J. S., *Insurance*, §658.

We gather from appellant's argument that objection is not made so much to the sufficiency of appellee's bookkeeping methods as it is to the correctness of the figures showing the money on hand at the time of the burglary, and particularly the amount of the "bank" at the beginning of the day, although the figure is supported not only by the records but by evidence of an actual count.

Appellant argues error in the sustaining of objections to three questions asked by appellant on the cross-examination of appellee and in sustaining appellee's objections to five questions asked of one Sidney Flaxman, a witness for appellant, on his direct examination. Some mention is made in

the briefs as to the sufficiency of the objections made to the questions. However, where objections to questions are sustained, any valid objection to the questions may be urged on appeal, regardless of the objections made in the trial court. Flanagan, Wiltrout and Hamilton, *Indiana Trial and Appellate Practice,* §1993, Comment 3, and authorities there cited.

One question asked on cross-examination of appellee by appellant was whether a certain firm of certified public accountants kept his books in the year 1953. There had been no evidence on direct examination as to the books for 1953. Appellee was later called as a witness for appellant and testified that that firm did keep his books for this period. Obviously appellant was not harmed by the ruling, even if it were to be considered erroneous. *Terre Haute, etc., Traction Co.* v. *Stevenson* (1919), 189 Ind. 100, 111, 123 N. E. 785, 126 N. E. 3; *Whitacker* v. *Low, Receiver* (1935), 102 Ind. App. 47, 54, 197 N. E. 690.

The motion for new trial and the argument part of appellant's brief states that the other two questions asked of appellee, and to which appellee's objections were sustained, were asked on the cross-examination of appellee by appellant. However, it appears that the questions were actually asked of appellee on direct examination while testifying as a witness called on behalf of appellant. Appellee was asked whether he had been asked the following question when he was being interrogated by an insurance adjuster: "In other words, you almost started a new set of bookkeeping at that time?" There was an offer to prove that he gave a certain answer to the question. We are unable to determine from the question and offer what time was being referred to in the question, whether it was

when the appellee first opened his store in 1953, or at some other time, and are unable to determine definitely that the question was material to any issue, or that appellant was harmed by the ruling.

Appellee was also asked, during the same direct examination, a question designed to elicit whether he used the same National Cash Register forms in 1953 as he did in 1954. It appears from the condensed recital of the evidence that appellee in substance gave the information called for by this question in response to other questions, and therefore appellant was not harmed by the ruling. *Carp & Co.* v. *Meyer* (1929), 89 Ind. App. 490, 167 N. E. 151; *Prudential Ins. Co.* v. *Citizens Tr. & S. Bk., Gdn.* (1935), 101 Ind. App. 168, 198 N. E. 116; *Bayh* v. *Ellis, Tr.* (1936), 101 Ind. App. 572, 200 N. E. 455; *Costa et al.* v. *Costa et al.* (1953), 124 Ind. App. 128, 115 N. E. 2d 516.

One Sidney Flaxman, a certified public accountant, called as a witness on behalf of appellant, was asked five questions on direct examination, to which objections were sustained. One of these questions was answered before appellee made his objection and there was no motion to strike the answer, which remained in the record. Appellant was not harmed by the ruling. 88 C. J. S., *Trial*, §133, at p. 267.

From the other questions, offers to prove, and appellant's argument, it appears that appellant desired to establish from the testimony of this witness that the appellee closed his books on December 31, 1953, showing cash on hand in the sum of $3123.95, and on January 1, 1954, opened his books showing cash on hand of $9533.56, and that there was no explanation of the overnight increase of $6469.60; that by reason of this fact the witness challenged the "bank" of $9362.34 shown in appellee's records for the beginning of the

day of the burglary, April 11, 1954, and concluded that appellee's loss was much less than the amount claimed.

Appellee argues that such evidence would not be within the issues as limited by the stipulation at the pre-trial conference; that the evidence could only go to show the condition of the records a considerable period of time before the burglary and is not material on the question of whether appellee's records were sufficiently kept so that the loss could be accurately determined from them. Appellant argues that this line of questioning goes beyond that; that one of the issues to be tried was the amount of the loss and that this evidence would directly bear upon such issue.

The following language of the Supreme Court in *State* v. *Lee* (1949), 227 Ind. 25, 83 N. E. 2d 778, appears to us to be quite apropriate here:

". . . While offered evidence may be logically relevant, its admission must be subject to the primary test of its value in the particular case.

8. Practical conditions do not permit the court to hear every matter that may be in any degree logically relevant to the issue, but require that matters received as evidence shall have a higher degree of probative force which may be termed legal relevancy or materiality. Offered evidence which does not measure up to this requirement may be properly rejected. The exclusion of evidence as not material either because too remote, too uncertain or too conjectural is a matter largely within the discretion of the trial court. See 31 C. J. S., Evidence, §159, p. 866. *Nickey* v. *Zonker* (1903), 31 Ind. App. 88, 90, 67 N. E. 277. *The Insurance Co. of North America* v. *Brim* (1887), 111 Ind. 281, 286, 12 N. E. 315. *Jones* v. *Julian* (1859), 12 Ind. 274; 20 Am. Jur., Evidence, §§246, 247, p. 239, 240."

In our opinion, the court did not abuse its discretion in excluding the offered testimony. Finding no error, the judgment is affirmed.

ON PETITION FOR REHEARING

GONAS, P. J.—The appellant has filed herein what is designated an "Application for a Rehearing." We consider this to be intended as a petition for a rehearing. The application is in brief form and undertakes to state, in a chronological order, reasons why our opinion in this matter is erroneous.

Following each statement as grounds for believing our opinion to be erroneous is a discussion or argument, with citations of various authorities. Apparently, the appellant has sought to combine its brief with the statement of reasons for a rehearing.

It is provided by Rule 2-22 that application for a rehearing shall be by petition, separate from the briefs, stating concisely the reasons why the decision is thought to be erroneous. The application may, if desired, be supported by briefs. It has been many times held by our courts that an application or a petition for rehearing must conform to the aforesaid rule and that it must not be an argumentative brief. See *Guthrie* v. *Blakely et al.* (1956), 127 Ind. App. 119, pp. 140, 141, 142 and 143, 130 N. E. 2d 62. The application at hand contains twelve pages of printed matter, makes reference to the parties' briefs, makes references to the record and pages, contains argument of stated propositions, and citations of various authorities to support the propositions. All of this under one cover.

It is clear that the application for rehearing now under consideration does not comply in any respect with the aforesaid rule of the Supreme Court. Said rule has the force and effect of law and is binding on the courts as well as the litigants. See the host of authorities cited in *Guthrie* v. *Blakely et al., supra.*

The appellee has filed a petition to dismiss appellant's said application for a rehearing on the ground that it does not comply with the rule of the court and, under the conditions existing, said petition to dismiss must be sustained. We are not at liberty to alter or ignore the rule nor to apply it as to some and not as to others.

Appellant's application for a rehearing is dismissed.

NOTE.—Reported in 156 N. E. 2d 644. Rehearing dismissed 157 N. E. 2d 840.