IN RE ESTATE OF MCCLAIN ET AL. *v.* MCCLAIN.

[No. 19,502. Filed June 29, 1962.
Rehearing dismissed August 13, 1962.]

646

648

John O. Campbell, Richard E. Sisson, Charles & Tobin, H. D. Nesbitt, Campbell, Gemmill, Browne, Torrence & Sisson, of counsel, all of Marion, for appellants.

Cole, Wildman & Cole and Russell J. Wildman, of Peru, for appellee.

Ax, J.—Appellee filed a Petition to Determine Heirship wherein she alleged that John F. McClain, deceased, died. intestate August 19, 1956, and left surviving him as his sole and only heirs-at-law his second childless widow (the petitioner and appellee herein) and Thomas G. McClain, his son born by a prior marriage.

Appellants denied this heirship and by an answer set forth a Pre-Marriage Settlement Agreement entered into between decedent and appellee.

The sole question presented to the court below concerned the validity of the Pre-Marriage Settlement. The trial court found the agreement to be invalid and determined that appellee and decedent's son should share in the estate as provided by the Statutes of Descent of the State of Indiana.

Appellant contends that the agreement is valid and that the decision below is contary to law and is not sustained by sufficient evidence.

Appellee's position is that the antenupital contract, designated by the parties as a Pre-Marriage Settlement, is invalid because it is against public policy in

that it relieved the decedent, John F. McClain, of any duty to support his wife and thereby encourages domestic discord.

The contractual provisions pertinent to a consideration of the issues are as follows:

"Pre-Marriage Settlement Agreement.

"THIS AGREEMENT entered in duplicate between JOHN F. McCLAIN, herein called 'McCLAIN' and HELEN BONTA, herein called 'BONTA,'

### Witnesseth

"WHEREAS, the parties hereto contemplate marriage at an early date and desire to have their property matters made certain previous thereto;

"WHEREAS, the parties hereto desire to have and hold their separate property after said marriage, free from any incidents that may arise out of said proposed marriage relationship.

"NOW, THEREFORE, in consideration of the premises and the mutual covenants, agreements and conditions herein contained, the parties hereto covenant and agree as follows, to-wit:

"After the marriage of the parties, Bonta shall have and hold any monies, earnings, income, property (real, personal or mixed), insurance or estate of any character or nature which Bonta may now have or may acquire as her sole and separate property, free and discharged from any rights of McClain arising out of said marriage relationship of the parties, free and discharged from any rights of inheritance, descent, statutory allowance, statutory support, or otherwise, and free and discharged of any right to administer upon the estate of the other, the right to elect to take against a Will of the other, or to interfere or participate in any manner in the settlement and administration of the estate of the other.

"After said marriage, the provisions hereof shall not prevent either party hereto from making provision for the other by Will, by contractural or title arrangement, or otherwise, and such provision made in any such instruments shall not be impaired by this agreement; and subsequent to this agreement either party may arrange titles to their respective after-acquired property in such manner as they please, and this agreement shall not affect such arrangements. . . . "

Appellee contends that the words "free and discharged from any rights of Bonta arising out of said marriage relationship of the parties, free and discharged from any rights of inheritance, descent, statutory allowance, statutory support or otherwise" as used in paragraph 2, represents an illegal attempt on the part of Mr. McClain to relieve himself of the duty imposed upon him by established law to support his wife.

The trial court evidently adopted the appellee's construction of the contractual provisions by following the general rule of law to the effect that if any part of an entire consideration for a promise, or of any part of an entire promise, is illegal, whether at common law, or by statute, the whole contract is void. *James et al.* v. *Jellison* (1883), 94 Ind. 292; *Jordan* v. *Kittle* (1928), 88 Ind. App. 275, 150 N. E. 817. However, there is a well recognized exception to the rule invalidating antenuptial agreements which provides for, facilitates or tends to induce a separation or divorce by placing the husband in a position to profit therefrom. This exception arises where the agreement also contains a provision delineating the rights of the survivor on death, where the parties in fact cohabit until one of them dies. In such circumstances the invalidity of the clause relating to separation or divorce does not affect the

provisions concerning rights on death. 57 A. L. R. 2, §4, p. 949.

The above exception is based upon the well established principle of contract law which asserts in substance that if the consideration for a contract be partly legal and partly illegal, the courts will not enforce a promise based upon it, as the illegal part of the consideration vitiates the entire contract and renders it unenforceable, but if several promises, some of which are legal and some illegal, be all based upon one entire consideration which is legal, the law will enforce the legal promise while denying relief in proceeding to enforce the illegal promises. *Simpson et al.* v. *Fuller* (1943), 114 Ind. App. 583, 587, 51 N. E. 2d 870; *Hynds* v. *Hays* (1865), 25 Ind. 31, 40.

Marriage is the primary consideration for promises made in an antenuptial contract, and when some of such promises are legal while others are illegal, the former will be enforced regardless of the illegality of the latter. *Stratton, Admr.* v. *Wilson* (1916), 170 Ky. 62, 69, 185 S. W. 522; *Ehlers* v. *Ehlers* (1930), 259 Ill. App. 142.

In the case herein the parties agreed in effect that the survivor of their marriage would take nothing by virtue of their marital relationship. Such an agreement is not only legal but is favored by the law as promoting domestic happiness and adjusting property questions which might otherwise become the source of litigation. *Buffington* v. *Buffington, Executor* (1898), 151 Ind. 200, 51 N. E. 328; *Baugher* v. *Barrett et al.* (1957), 128 Ind. App. 233, 145 N. E. 2d 297; *Roush* v. *Hullinger et al.* (1949), 119 Ind. App. 342, 86 N. E. 2d 714.

The case of *Baugher* v. *Barrett, supra,* sets forth general rules for construction of antenuptial agreements in the following statement:

"There are certain general rules of construction with reference to the determination of . . . an antenuptial agreement. The authorities ▮ seem to agree that in construing such agreements that they are to be construed generally according to principles applicable to the construction of contracts generally, but since such agreements are favored by public policy, they shall be construed liberally to effect the intention of the parties, and in determining such intention, consideration should be had of the language of the entire instrument, together with its general scope and purpose, the conditions surrounding the parties at the time the agreement was made, the legal rights of the parties as they existed before, and would have existed after the marriage if no agreement had been made. 26 Am. Jur. *Husband and Wife* §280, pp. 886-887. Each case must be determined upon the basis of the facts in the particular case and the language used in such agreements."

Under this statement of law, the antenuptial agreement is to be construed:

1. According to the principles applicable to the construction of contracts generally; and

2. Liberally to effect the intention of the parties.

The antenuptial contract was entered into by appellee and decedent on the 10th day of February, 1955 subsequent to the enactment and effective date of the new Probate Code and prior to the marriage of the parties. The Probate Code, §213 of Chapter 112 of the Acts of 1953, the same being §6-213 of Burns' Indiana Statutes Annotated, 1953 Replacement, is applicable and must be considered in determining the validity

of the Pre-Marriage Settlement Agreement. This statute reads as follows:

"Waiver of Expectancy.—The intestate share or other expectancy which the spouse or other heir may be entitled to may be waived at any time by a written contract, agreement or waiver signed by the party waiving such share or expectancy. The promise of marriage, in the absence of fraud, shall be a sufficient consideration in the case of an agreement made before marriage. In all other cases such contract, agreement or waiver shall be binding upon the parties thereto if executed after a full disclosure of the nature and extent of such right, and if the thing or promise given to such party is a fair consideration under all the circumstances. Except as otherwise provided therein, such waiver executed by the decedent's spouse shall be deemed a waiver of the right to elect to take against the decedent's will and the written contract, agreement, or waiver may be filed in the same manner as is provided in this code for the filing of an election. (Acts 1953, ch. 112, §213, p. 295.)"

The enactment of this section of the Probate Code is a codification of the case law of Indiana and an affirmation of the public policy of this State to favor antenuptial agreements. The waiver of the intestate share or other expectancy of a spouse at any time is expressly provided; and, in the case of an agreement entered into before marriage, the promise of marriage, in the absence of fraud, is declared to be a sufficient consideration.

The evidence, when tested against the provisions of the statute, substantiates the Pre-Marriage Settlement in all respects. The agreement is in writing. The agreement is founded upon a sufficient consideration: the promise of marriage. There is no evidence from which even an inference of any probative force or

value may be drawn that fraud in any way entered into this agreement.

There is a total absence of evidence upon which the trial court could base a finding that the Pre-Marriage Settlement Agreement is invalid and it must, therefore, be assumed that such finding is founded upon the content of the agreement itself.

In construing the agreement, there are well recognized and accepted rules of construction which, when applied to the antenuptial agreement in issue, sustain rather than invalidate it. In the case of *Bojarski* v. *Ballard* (1942), 113 Ind. App. 6, 44 N. E. 2d 200, the Appellate Court said:

> "When it is necessary to construe a contract, the construction to be adopted is the one which appears to be in accord with justice and common sense and the probable intention of the parties in. the light of honesty and fair dealing and to accomplish the end and serve the purpose intended by the parties. *The Illinois Pipe Line Co.* v. *Brosius* (1939), 106 Ind. App. 390, 20 N. E. 2d 195. Another rule of construction is that the intention of the parties to a contract must be determined by viewing the instrument as a whole and not from detached provisions thereof. *Sindlinger* v. *Department of Financial Institutions* (1936), 210 Ind. 83, 199 N. E. 715."

In the case of *Walb Construction Co.* v. *Chipman* (1921), 202 Ind. 434, 175 N. E. 132, the Court said:

> "The cardinal rule in the interpretation of contracts is to ascertain the intention of the parties, as expressed in the language used, and to give effect to that intention, if it can be done consistent with legal principles. . . . "

Another rule of construction pertaining to contracts is that a construction upholding the contract is preferred to one which would invalidate; this rule is set

forth in the case of *Wallace* v. *Mertz, Admr.* (1927), 86 Ind. App. 185, 156 N. E. 562 as follows:

" . . . It is the law that in order that a contract be valid and enforceable, it must be reasonably definite and certain, so that the intention of the parties can be ascertained. But courts will not declare contracts entered into in good faith void and unenforceable when their meaning can be determined by recognized and reasonable rules of construction, and if the contract be capable of a construction that will uphold it, it is to be adopted rather than one which will defeat it. . . . "

Another rule of construction applicable here is found in the case of *International Shoe Company* v. *Lacy* (1944), 114 Ind. App. 641, 53 N. E. 2d 636, wherein the Court said:

"Courts will not find uncertainties in contracts if it is possible to logically construe them otherwise, but for a contract to be valid . . . it must be reasonably definite and certain, so that the intention of the parties can be ascertained. . . . "

The intention of the parties must be gathered from the whole contract rather than isolated parts or fragments. The case of *Ahlborn et al.* v. *City of Hammond* (1953), 232 Ind. 12, 111 N. E. 2d 70, states the rule in this manner:

"It is well settled that words, phrases, sentences, paragraphs . . . of a contract cannot be read alone. . . . The intention of the parties must be gathered from the entire contract. . . . "

To determine the meaning to be given the words of the agreement in question, the rule stated in *Haworth* v. *Hubbard et al.* (1942), 220 Ind. 611, 44 N. E. 2d 967 might well serve as the accepted guide. The rule is stated as follows:

"It is everywhere agreed that words used in a contract are to be given their usual and common meaning unless, from the entire contract and the subject matter thereof, it is clear that some other meaning was intended. . . ."

Another rule of construction applicable to the agreement herein is set forth in *Sindlinger et al.* v. *Dept. of Financial Institutions* (1936), 210 Ind. 83, 199 N. E. 715, wherein the Court said:

"A liberal or technical construction of an isolated or special clause should not be indulged to defeat the true meaning of a contract. The true meaning of a contract is to be ascertained from a consideration of all of its provisions in order to carry out the true intention of the parties gathered from the whole instrument. . . ."

It is not the purpose of the law to abrogate the terms and provisions of contracts by construction where the language is clear and unambiguous but rather to enforce it as entered into by the parties. This rule is more precisely stated in *Gaw* v. *LaPorte Corp.* (1956), 126 Ind. App. 143, 130 N. E. 2d 790 as follows:

"A court is not at liberty to revise a contract while professing to construe it. Neither does it have the right to make a contract for the parties, that is, a contract different from that actually entered into by them. . . ."

The agreement herein sets forth the intention of the parties with particularity both in the preamble and in the body of the document. The intention of each party to release his or her interest in property of the other is not hidden or obscured in any manner. The language of the instrument is

clear and specific and considered in light of its ordinary meaning is without ambiguity. Only by distorting the language used and rejecting the obvious intent of the parties embodied in the agreement can it be concluded that the Pre-Marriage Settlement Agreement is other than valid and proper in all respects.

Given a liberal construction to effectuate the intention of the parties, the agreement must be held as prohibiting appellee from sharing in the estate of decedent.

The case of *Roush* v. *Hullinger, supra*, reviews the Indiana authorities pertaining to antenuptial agreements and interpretation of such agreements. In its analysis of this field of law, this Court cited the governing precepts, as follows:

"The right of an adult intended husband and wife in contemplation of marriage to intercept a statutory line of descent, or the rights conferred by law, and substitute by contract, or agreement, a rule of inheritance of their own creation, by which their respective rights in the property of each other may be measured or determined, is a well settled principle. *Bishop on Married Women* §427; *McNutt* v. *McNutt et al.* (1889), 116 Ind. 545, 19 N. E. 115.

"Antenuptial contracts are favored by the law. They adjust property questions and promote domestic happiness. In such contracts no formality is required and a liberal construction will be given them in every case, giving effect, if possible, to the intention of the parties. *Moore, Adm.* v. *Harrison, Adm.* (1900), 26 Ind. App. 408, 59 N. E. 1077 and cases there cited.

"The law is clear at the present time that an adult woman, before her marriage, may bar her legal rights in her husband's estate by her agreement to accept any other provisions in lieu thereof, and such an agreement will be upheld and enforced by the courts in the absence of fraud

or imposition upon her, and where it may be said, under the particular circumstances, that it is not unconscionable." *Kennedy* v. *Kennedy et al., supra.*

In the case of *McNutt* v. *McNutt et al., supra,* the court said:

" . . . The truth is, it is exceedingly difficult to imagine why, in any case where there is no fraud, courts should displace the judgment of contracting parties and substitute their own. No person in the world can so well and so justly judge as the contracting parties themselves, and it is only in the strongest and clearest cases that courts should disregard their judgment, and never where there is neither positive wrong nor a fraud.

"Our courts have uniformly upheld antenuptial contracts where fairly entered into, even though the effect be to leave the surviving wife very little, based upon the motives of marriage not being mercenary, but of the consideration in itself, and holding under such contracts, that the considerations fixed by the parties will be deemed sufficient, even though the provisions for the contemplated wife be much less than the statutory right of widows, or even give her no property interest. . . . *Mallow* v. *Eastes* (1912), 179 Ind. 267, 100 N. E. 836, and cases there cited. . . . "

In the light of the well established public policy in this State favorable to antenuptial agreements, and the fact that the objectionable portion of this agreement has been vitiated by death, we hold that the contractual provisions relating to rights accruing on death should be enforced to give effect to the clearly expressed intention of the parties thereto.

Judgment reversed.

Cooper, P. J. and Myers, J., concur. Ryan, J., concurs in result only.

## ON PETITION FOR REHEARING.

Ax, J.—Appellee filed within time a petition designated as a "Petition for Rehearing." Within ten days thereafter appellants filed their motion, together with a separate brief, asking that said petition for rehearing be dismissed for failure to comply with Rule 2-22 of the Supreme Court. This rule reads as follows:

"Rehearings. Application for a rehearing of any cause shall be made by petition, separate from the briefs, signed by counsel, and filed with the clerk within 20 days from rendition of the decision, stating concisely the reasons why the decision is thought to be erroneous. Such application may, if desired, be supported by briefs, but such briefs will not be received after the time allowed for filing the petition. Parties opposing the rehearing may file briefs within 10 days after the filing of the petition."

As a part of said petition, appellee has sought to combine her brief with the statement of reasons for rehearing in that said petition makes reference to the briefs filed by the parties hereto and contains argument of stated propositions and citations of various authorities to support the propositions, all under one cover without the filing of a separate brief in support of appellee's petition. Although this petition contains but three propositions, claiming error of this court in its opinion, nevertheless appellee has utilized four and one-half pages in arguing these various propositions, none of which concisely states the reasons why the decision of this court is thought to be erroneous.

It has been held by our courts that a petition for rehearing must conform to the aforesaid Rule 2-22 and that it must not be an argumentative brief. See *Guthrie* v. *Blakely et al.* (1956), 127 Ind. App. 119, 130 N. E. 2d 62; *Maryland*

*Casualty Co. etc.* v. *Weiss* (1958), 129 Ind. App. 481, 156 N. E. 2d 644.

We are cognizant of the still apparent confusion that exists among the members of the legal profession in interpreting this Rule 2-22. In *Automobile Underwriters, Inc.* v. *Smith* (1960), 131 Ind. App. 454, 167 N. E. 2d 882, on petition for rehearing, this court attempted at that time to obtain clarification of Rule 2-22, and it was in answer to that opinion that the Supreme Court speaking through Judge Achor, in *Automobile Underwriters, Inc.* v. *Smith* (1961), 241 Ind. 302, 171 N. E. 2d 823, 825, in attempting to clarify Rule 2-22, stated:

> "Under the above rule, alleged errors in the opinion, which are assigned as cause or grounds for rehearing, must be supported by a statement which concisely states 'the reasons why the decision is thought to be erroneous.' Rule 2-22. The rule contemplates that, in this manner, the court shall be aided in its consideration of the petition. Consistent with the purpose of the rule, alleged errors in the opinion, not supported by a concise statement of the reasons in support thereof, are considered waived. However, it is not necessary, as stated in the Dorweiler case, supra, that such reasons be supported by argument. In any event, however, if such reasons cannot be concisely stated, and it is considered that extensive argument in support of alleged errors in the opinion is desired, such argument must be submitted *separate* from the petition."

We believe under the verbiage of Judge Achor that "such argument must be submitted separate from the petition" that it follows that the purported ▮ petition for rehearing herein containing extensive argument in support of alleged errors does not conform to the requirements of Rule 2-22.

Since appellee's petition fails to conform with said

Rule 2-22, appellants' Motion to Dismiss should be sustained.

Appellants' Motion to Dismiss Appellee's Petition for Rehearing is now sustained, and appellee's Petition for Rehearing is dismissed.

Cooper, P. J., Ryan, J. and Myers, J., concur.

NOTE.—Reported in 183 N. E. 2d 842. Rehearing dismissed 184 N. E. 2d 281.