KLEINKNECHT, ET AL. *v.* CITY OF EVANSVILLE.

[No. 19,804. Filed March 10, 1965. Rehearing dismissed May 11, 1965. Transfer denied June 25, 1965.]

*Edwin W. Johnson, John L. Carroll, and Johnson and Carroll,* of Evansville, and *Donald E. Bowen* and *Bowen, Myers, Northam & Givan,* of Indianapolis, for appellants.

*Jerome L. Salm, Robert S. Matthews, Ralph E. Moore* and *David M. Keck,* of Evansville, for appellees.

MARTIN, J.—The appellants' assignment of errors—

1. The court erred in overruling the appellants' motion for a new trial.

2. The court erred in not reopening said cause to hear evidence on newly discovered evidence material to the party applying, which appellants could not with reasonable diligence have discovered and produced at the trial.

The appellants have not discussed in the argument portion of appellants' brief the second assigned error.

Accordingly, appellants have waived this specification of error. Rule 2-17 of the Supreme Court, 1964 Edition. *McCracken* v. *Hunter et al.* (1962), 134 Ind. App. 157, 186 N. E. 2d 884.

The appellants' brief does not comply with Rule 2-17 (e) of the Supreme Court. In the case of *Board of Med. Regist. and Exam., etc.* v. *Bowman* (1958), 238 Ind. 532, 534, 150 N. E. 2d 883, (rehearing denied), the Court stated:

"(e) The brief shall contain under the heading 'Argument' a specification of such of the assigned errors as are intended to be urged, and each cause in the motion for a new trial which is intended to be urged. After each assignment of error relied upon—except the ruling on a motion for a new trial, and after each cause for a new trial relied upon, there shall be concisely stated the basis of the objection to the ruling complained of, . . ." *Peckham* v. *Smith, A Minor, etc.* (1960), 130 Ind. App. 452, 165 N. E. 2d 609; *Estate of Stuart et al.* v. *Kesterson et al.* (1959), 130 Ind. App. 130, 159 N. E. 2nd 321 (rehearing denied, transfer denied).

Under the argument portion of appellants' brief "B", "C", "D", and "E", these portions of the appellants' brief do not refer to any particular assignment of cause for a new trial.

Errors assigned and causes for a new trial not treated as herein directed shall be deemed to be waived. Rule 2-17, *supra*.

This leaves the appellants with two questions under their motion for a new trial to be disposed of by the court.

First, the decision of the court is not sustained by sufficient evidence.

Second, the decision of the court is contrary to law.

Thus, the appellants assail the finding and judgment.

1. The decision of the court is not sustained by sufficient evidence.

In the matter of the annexation of certain unincorporated territory to the City of Evansville, Indiana, the Superior Court of Vanderburgh County, Indiana, on July 26, 1961 entered the following finding and judgment:

"The Court now finds that the respondent City of Evansville, Indiana, has, by its evidence, demonstrated the presence of the following determinants, and each of them with relation to the territory to be annexed to said City under Ordinance No. 2396, as amended, adopted the 16th day of November, 1959, namely:

"(a) That the annexation is in the best interests of the City and of the territory to be annexed;

"(b) That the area is urban in character, being an economic and social part of the annexing City;

"(c) That the terms and conditions set forth in the ordinance, as amended, are fair and just;

"(d) That the City is financially able to provide municipal services to the annexed area within the reasonably near future;

"(e) That the area sought to be annexed is needed for the development of the City in the reasonably near future;

"(f) That the lines of annexation are so drawn as to form a compact area abutting the municipality;

"and the Court further finds that the costs of this action should follow the judgment.

"IT IS, THEREFORE, CONSIDERED, ORDERED, ADJUDGED AND DECREED by the Court that Ordinance No. 2396, as amended, of the City of Evansville, Indiana, by the terms of which said City annexed to the following described territory, to-wit:

"Parts of Section 27, Township 6 South, Range 11 West; Section 34, Township 6 South, Range 11 West; lying in Vanderburgh County, Indiana, more particularly described as follows:

"Beginning at the Southeast corner of the Northeast Quarter of the Southeast Quarter of Section 34, Township 6 South, Range 11 West, also being the Southwest corner of the present City Limits; thence West along a line parallel to the South line of Section 34, Township 6 South, Range 11 West to the West line of said Section 34; thence North along said line to the North line of said Section; thence continuing North along the West line of Section 27, Township 6 South, Range 11 West, to the North line of said Section; thence East along said North line to the South right-of-way line of the Louisville Nashville Railroad; thence Southeasterly along said right-of-way to a point 180 feet West of the center line of Tekoppel Avenue, said point also being the present City Limits; thence South along said City Limits line to the place of beginning;

"and which said ordinance, as amended, is found in Ordinance Book 14, at page 377 of the Ordinance Records of said City in the possession of the City Clerk thereof,be and the same hereby is sustained as against the remonstrance filed thereto by Charles Kleinknecht, et al.

"AND IT IS FURTHER ORDERED that the Clerk of this Court, forthwith, deliver a certified copy of this judgment to the Clerk of the City of Evansville, who shall record the same in the Ordinance Record of said City and make a cross reference to the page thereof upon the margin where such annexation ordinance, as amended, is recorded."

The trial court took such action pursuant to §48-702 Burns 1963 Replacement. Said section reads in part, as follows:

"Such evidence demonstrating the presence of the following conditions shall be considered the primary determinants of the annexation's merit:

"(a) The annexation is in the best interests of the city and of the territory sought to be annexed.

"(b) The area is urban in character, being an economic and social part of the annexing city.

"(c) The terms and conditions set forth in the ordinance are fair and just.

"(d) The city is financially able to provide municipal services to the annexed area within the reasonably near future.

"(e) The area sought to be annexed, if undeveloped, is needed for development of the city in the reasonably near future.

"(f) The lines of the annexation are so drawn as to form a compact area abutting the municipality.

"If the judge of the court shall find that the primary determinants enumerated above apply to the annexation, it shall take place notwithstanding, further, the provisions of any other statute of this state."

The following stipulation was entered into:

"Comes now the plaintiffs and remonstrators, by their attorneys, Johnson and Carroll; and comes now the defendant, City of Evansville, Indiana, by its attorneys (attorney), Jerome L. Salm; and now the parties in open court stipulate and agree as follows:

"1. That within the area sought to be annexed by the City of Evansville in the within cause, there were eight hundred and fifty-nine (859) separate owners of land herein.

"2. That more than fifty-one percent (51%) of the owners of land in the said territory sought to be annexed deemed themselves aggrieved and injuriously affected by and filed their remonstrances in writing against the annexation of said territory, together with a copy of the ordinance, in the Superior Court of Vanderburgh County within thirty (30) days after the last publication of the ordinance seeking to annex the said territory.

"3. That by reason of the timely filing of written remonstrances and compliance with the statutes of the State of Indiana by the plaintiffs and remonstrators herein, the Superior Court of Vanderburgh County has jurisdiction of the parties and subject matter."

The parties stipulated in open court that Ordinance No. 2396, as amended, was adopted by the Common Council of the City of Evansville on the 16th day of November, 1959, approved by the Mayor on the 18th day of November, 1959, and duly published in the Evansville Courier and the Evansville Press on November 20 and 27, 1959.

Ordinance No. 2396, as amended, reads as follows:

"ORDINANCE ANNEXING CERTAIN CONTIGUOUS TERRITORY THEREIN DESCRIBED TO THE CITY OF EVANSVILLE, INDIANA.

"BE IT ORDAINED BY THE COMMON COUNCIL OF THE CITY OF EVANSVILLE, INDIANA:

"Section 1. The following described territory, which adjoins and is contiguous to the corporate limits of the City of Evansville, and which lies in Vanderburgh County, State of Indiana, is hereby annexed to and declared to be part of said City:

"Parts of Section 27, Township 6 South, Range 11 West; Section 34, Township 6 South, Range 11 West; lying in Vanderburgh County, Indiana, more particularly described as follows:

"Beginning at the Southeast corner of the Northeast Quarter of the Southeast Quarter of Section 34, Township 6 South, Range 11 West, also being the Southwest corner of the present City Limits; thence West along a line parallel to the South line of Section 34, Township 6 South, Range 11 West to the West line of said Section 34; thence North along said line to the North line of said Section; thence continuing North along the West line of Section 27, Township 6 South, Range 11 West, to the North line of said Section; thence East along said North line to the South right-of-way line of the Louisville Nashville Railroad; thence Southeasterly along said right-of-way to a point 180 feet West of the center line of Tekoppel Avenue, said point also being the present City Limits; thence South along said City Limits line to the place of beginning.

"Section 2. The effective date of this annexation shall be December 1, 1959 and this ordinance shall be in full force and effect from and after December 1, 1959.

"Section 3. Publication of this ordinance as required by law is hereby ordered.

. . . . .

"PASSED by the Common Council of the City of Evansville, Indiana this 16th day of November, 1959, and on said day signed by the President of the Common Council and attested by the City Clerk.

"s/s    Joseph F. O'Day
        President

"ATTEST:
"s/s    John O. Steinmetz
        City Clerk

"Presented by me, the undersigned City Clerk of the City of Evansville, Indiana, to the Mayor of said City this 18th day of November, 1959, at 10:20 o'clock A.M. for his consideration and action thereon.

"s/s    John O. Steinmetz
        City Clerk

"Having examined the foregoing ordinance, I do now, as Mayor of said City of Evansville, Indiana approve said ordinance and return the same to the City Clerk, this 18th day of November, 1959, at 10:31 o'clock A.M.

"s/s ·  J. William Davidson
        Mayor of the City of
        Evansville, Indiana

"APPROVED AS TO FORM:
"s/s    James W. Angermeier
        City Attorney"

The Executive Secretary and Planning Director to the Evansville, Vanderburgh County Regional Plan Commission testified, in part, that City's Exhibit No. 2 is a map of the city of Evansville and surrounding

territory in Vanderburgh County and shows the area sought to be annexed as a cross-hatched rectangular portion in the upper left-hand section of the exhibit. He further testified that the words appearing on the exhibit "City of Evansville 28 Sq. Miles," were put on under his control and includes the areas to be annexed; that the population of the city, 127,168, was based on the 1960 census figures received from the United States Bureau of Census.

He further testified that the notation "1.7 sq. mi." shown on the cross-hatched section of City's Exhibit No. 2, which is the area described as included in Annexation Ordinance No. 2396, as amended, represents the area of that cross-hatched section as 1.7 square miles and is the area included in Ordinance No. 2396, as amended. Also he stated that the words "Est. Pop. 2881" in the cross-hatched section of this Exhibit No. 2 represent the estimated population of the cross-hatched area.

This witness testified that City's Exhibit No. 3 is a map on a scale of one inch to 400 feet, showing the territory proposed to be annexed within a red line and showing the general layout of the land in that area, which map was prepared under his control. He testified that the marks on City's Exhibit No. 3 in the area delineated in red markings show streets in the area; and black dots, rectangles and squares on the map represent physical buildings in the area, showing the same to be houses or commercial buildings; the large rectangular shaped buildings adjacent represent the Bucyrus-Erie Industrial Plant; and four red dots and two rectangles nearly in the center of the map, north and south, and immediately east of the area outlined in red represent sewage disposal plant of the City of Evansville and

Sewage Department buildings and sludge beds and pumping units; that the map shows the north to be the top and the south to be the bottom of the map, that the large rectangle and two squares near the right-hand or eastern part of the area delineated in red show the residential section known as "Howell," with a city school building and a fire house around the corner from the school; that in the area north of or above the buildings described as the Bucyrus-Erie Plant, the rectangular and square black marks east of the area delineated in red represent residential area; that the slightly blacker spot therein represents a school; that the area which is shown as a dark patch north of the L. & N. Railroad tracks contains another school, and the railroad tracks cut the northeast corner of the area to be annexed and form a boundary; and there is a new school proposed just north of that boundary.

He testified that City's Exhibit No. 4 is an overlay of the base of City's Exhibit No. 3 and represents plats and subdivisions in the area.

In his testimony he stated that City's Exhibit No. 5 is an overlay of City's Exhibits Nos. 3 and 4, and shows all the physical property built in the territory sought to be annexed, depicts the area sought to be annexed by Ordinance No. 2396, as amended; that the rectangles and squares marked in red represent dwelling units, stores, and schools physically constructed in the territory sought to be annexed; that there are approximately 660 dwelling units and approximately 27 commercial units and one school and one or two farm houses shown in this City's Exhibit No. 5.

He further testified that City's Exhibit No. 6 is an overlay of City's Exhibits Nos. 3, 4, and 5, and is

also to the scale of one inch to 400 feet, and shows the city water mains, and city streets—and the various categories of how constructed: gravel, chip and seal, bituminous, or concrete construction; which exhibit was prepared in the office of the Evansville, Vanderburgh Regional Plan Commission under his supervision and control; that the solid blue lines on City's Exhibit No. 6 represent water mains in the delineated area, with indications as to the diameter: four inches, six inches, eight inches, or twelve inches; that the solid blue line leading off the road known as "Old Highway 62," along the road marked "Red Bank Road" —going north from Highway 62—is a six-inch in diameter and four-inch in diameter, as marked; that the solid brown line on the exhibit discloses a city sewer line; that the sewer lines are shown generally in the northeast portion of City's Exhibit No. 6; that City's Exhibit No. 6 also shows road and street surfaces, gravel surface being shown by red dot and dash lines, chip and seal being dot and dash green lines, bituminous shown by black dot and dash lines, and concrete by blue dot and dash lines; that the blue dot and dash line running from east to west across the top of the area represents the east-west Expressway, which is a major highway coming from Mt. Vernon on one side and going to Evansville on the other side; that it has a standard single pavement on the west side of this area and is divided into two lanes on the east side; that the divided highway merges to a single lane near Rosenberger, which is about half-way in the territory.

The City Civil Engineer of the City of Evansville testified that he is familiar with the boundaries to the area annexed to the City of Evansville under Ordinance No. 2396, as amended; that the description

makes one continuous description; that there are about 8500 lineal feet which touch the boundary line of the City of Evansville; that in the area just east of the area to be annexed under Ordinance No. 2396, as amended, the sewer disposal plant is located; that there is also a sewer shown north of the one which leads directly into the West Side disposal plant; that that sewer was constructed in 1955 or 1956 at the same time the West Side disposal plant was constructed; that that sewer was financed by bond issue of the City and was built at the same time the disposal plant was built, under two contracts; that the sewers north of the West Side disposal plant are known as the West Side Interceptor; that the sewer north of Claremont connects with the leading sewer into the disposal plant, and is actually one continuous sewer; that the cost of that sewer, the plant, was $1,984,376.00; that ditches and connections thereto cost $155,000.00 making a total of $2,139,376.00 which is the cost of building the disposal plant and the Interceptor sewer; that the disposal plant served the area within the City prior to the ordinance; that it is sufficient to serve the area west of the present city limit line and is sufficient to serve the area described in Ordinance No. 2396, as amended.

He testified that he was familiar with the water lines in the area sought to be annexed; that they are of sufficient size at present.

He further testified that the length of the water lines in that area is 2600 lineal feet of 8-inch, 5500 lineal feet of 6-inch, 29,000 lineal feet of 4 inches and under, all connected to the water system of the City, opened out of a central filtration plant within the city limits and poured through water mains within the city limits.

In his calculation of the number of fire hydrants required in the area sought to be annexed, he testified that his figures were based upon the streets then in existence and based upon the spacing of 600 feet between fire plugs; that the number he estimated was based on a street traversed and some houses built thereon; that he calculated that 85 new fire plugs would be needed; that at that time there was a plug at Highway 62 and Red Bank Road, one at Highway 62 and Helfrich Avenue, one at Bosse Avenue, and another on Bosse Avenue.

He further testified that he had counted the number of street lights that would be required for the area sought to be annexed and had determined that number to be 73; that the cost to the City, under the present contract for power would be $22.50 per year per light; that the total cost of these street lights would be about $1500.00 per year.

The Construction Superintendent of the Evansville Water Works testified that it was his function and duty to determine the pressure that is on the water lines inside and outside the City where served by the City Water Works; that his department checked the fire plug located at the intersection of Red Bank Road and Highway 62 west of the City of Evansville and the pressure at that point was 54 pounds; that this was abnormal since the normal pressure is around 40 pounds; that this was due to a new transmission line laid west of the City; that the pressure was running anywhere from 30 to 40 pounds; that it was felt that was inadequate; and a twelve-inch line from the city limits to Speaker Road west of the City was laid three weeks later entirely across the annexation area; that this twelve-inch line was tied into the old line; that there was an 8-inch on one and a 12-inch on the other;

that there are ten fire plugs on that line; that the line cost the people living in the area nothing; that it was laid entirely at the cost of the Evansville Water Works; that the Water Works derives its income solely from water revenues and has no tax income; that its net income is $40,000 to $50,000 a month; that his department has been installing fire plugs for the past year for the Water Works; that the policy is at present that if a line is found to be inadequate a larger line is installed free of charge; that if it were necessary to lay 6-inch lines in place of 4-inch lines in the annexation area for fire protection, the cost of the 6-inch lines would be borne by the Water Works; that in the installation of fire plugs for areas inside the City no charge is made by the Water Works Department; that they try to put fire plugs in at each street intersection, approximately 500 feet apart; that the charge for installation is $485; that they have in the planning stage an 8-inch line to be tapped into the 12-inch line just completed located at Burdette Park; that this would be installed at the County's expense and would be an 8-inch line; that it would be of adequate size to serve the inhabitants of the area between Old Highway 62 and Burdette; that the same number of fire plugs would be installed along the Burdette Park line regardless of annexation; that the difference would be if it were not annexed, there would be a $500 tap-in-fee; that if it were inside the city limits, there would not be a tap-in-fee; that he had taken the water pressure at the top of Claremont Hill at the intersection of Red Bank Road; and that the pressure that morning was 28 pounds.

The City Comptroller and Finance Officer of the City of Evansville testified that he was responsible for financing or the finances of the City of Evansville

and the calculation of city taxes and the expenditure of city funds; that he was familiar with the area sought to be annexed; that the area has 1101.9 acres; that the population of the area was 2881; that the personal property valuation was $400,000; that the assessed valuation of personal property for the year 1960 payable in 1961 in the area sought to be annexed was $400,000; that in making his calculation for City purposes of tax receipts to be derived by the City from the area sought to be annexed he used the value of $1,500,000 for real estate and improvements thereon; that he had available the information from which he could determine on the basis of net valuation, the return to the City by way of city taxes for the area sought to be annexed for the year 1960 payable in 1961 had the area been annexed on the 1st day of March 1960; that the amount of return from the taxes in the area based on $2.28 would be $27,972.04; that the rate which was given was the rate of City taxation for the year 1960 payable in 1961; that in addition to the tax return of $27,972.04 the City would also secure from the state gasoline tax $1.21 per person times 2336 people in the area, for a total of $2826.56; that this total return to the City for both real estate improvement taxes and gasoline taxes would be $30-798.60; that the City would have the obligation of furnishing service of garbage collection; that the cost of that service would be $5200 per year.

He further testified that the outstanding bond obligation of the City of Evansville as of December 31, 1960 was $3,900,000; that the total of the City's bonding capacity as of December 31, 1960, was $3,941,177 based upon a total assessed valuation of the City of $197,058,850; that the bonding capacity is calculated at 2% of that figure; that the unused bonding capacity of the City of Evansville on January 1, 1961 was

$932,177; that bonding capacity had been added to the City of Evansville by annexation; that under Ordinance No. 2400 the amount of bonding capacity would be $9278; that under Ordinance No. 2396, as amended, the bonding capacity would be $24,457; that including the two annexed areas the total bonding capacity of the City would be $966,012; that there was then pending in the City Council of Evansville an appropriation from bond funds of $480,000; that deducting that would leave $486,012.00 as the bonding capacity of the City.

The General Supervisor of Southern Indiana Gas and Electric Company testified that he was familiar with its facilities and the location of its meters and services; that he was familiar with the area sought to be annexed; that he had undertaken to determine the number of electric and gas services located in the area; that there were 1116 electric meters; that there were 346 gas meters as of January 17, 1961; that these connections made by his company within the area sought to be annexed are served by the facilities located within the City of Evansville.

A practicing attorney in the City of Evansville, who is also a member of the staff of the City Attorney's office, testified that he had examined the records of the Assessor's office to determine the assessed valuation of real estate within the area sought to be annexed; that he was familiar with that area; that the work was done by him in the County Assessor's office of Vanderburgh County; that the total assessed valuation of the real estate and real estate improvements within the area sought to be annexed was $1,528,675.00; that this was taken from the records for the year 1960 for taxes payable in 1961.

He further testified that that figure did not include

personal property; that subsequently he determined the amount of exemptions given in the area; that the amount of those exemptions was $305,800; that the net valuation of real estate and improvements for tax purposes in the area sought to be annexed was $1,222,875.00.

The Chief of Police of the City of Evansville testified that the City of Evansville furnishes police protection to the area sought to be annexed and has done so since it was first taken in by ordinance, the last year approximately; that there had been no additional costs to the City to provide this protection; that the area is covered with the same number of men and the same number of cars presently available; that in the event the area was annexed, there would be no additional policing costs; because in his opinion it is adequately policed now; that a cruiser car, accident investigation car, and a radar car is used; that there are several detective cars floating in and out of the area along with supporting investigation units, the Juvenile Division and Vice Squad car; that in his opinion the area sought to be annexed required no additional man power or equipment.

The Chief of the Evansville Fire Department testified that he was familiar with the area sought to be annexed; that the Fire Department services that area; that the Fire Department has always served it unless there would be a major fire inside the City; that to his knowledge the inhabitants of the area had never been refused service; that during the year the department made six runs; and that so far in 1961 they had made five runs; that Station No. 7 located at Howell and No. 5 at St. Joe and Michigan service that area; that No. 7 is about three miles from the farthest point in the area; that at the nearest point

it is three or four blocks; that Station No. 5 is within 20 blocks of the annexed area at the nearest point and five miles at the farthest point; that No. 7 has one 750-gallon pump; that Station No. 5 has a 1000-gallon pump; that there are plans and appropriation during the year 1961 for the expansion of the facilities of Station No. 5; that No. 5 will be a double house with ten new men; that in his opinion the equipment and expansion of Station No. 5 would be sufficient to properly cover the area sought to be annexed; that the annexation of that area to the City would cost nothing in addition to that already budgeted for the year 1961.

A city planning and zoning expert and consultant testified that he was familiar with the area sought to be annexed; that in his opinion the annexation of the area is in the best interests of the City and of the annexed area; that the area is urban in character; that the area is needed for the development of the City in the reasonably near future; that the boundaries of the annexed area are contiguous with the western boundaries of the City of Evansville; that the boundary lines are drawn in a logical fashion; that the annexed area forms a compact area abutting the present city boundaries.

A survey was made by various witnesses of the homes located in the area sought to be annexed to the City of Evansville under Ordinance No. 2396, as amended, and the evidence showed that there were 264 persons living within this area who work at factories and business establishments in the City of Evansville.

The director of Industrial Research for the Evansville Chamber of Commerce testified that he was familiar with the area sought to be annexed under Ordinance No. 2396, as amended, as delineated in red on City's Exhibit No. 3; that from his observation of the area and of the surrounding territory the three basic fac-

tors of (1) position and location of manufacturing employment in existence, (2) relationship and need of manufacturing employment in the area as a working force, (3) means by which the residential occupants in the area where the work force resides can travel to and from present concentrations of employment, are considered. The Mead Johnson plant is ten blocks east of the area described in Ordinance No. 2396, as amended, and employs 1600 persons; George Koch Sons is located approximately 15 blocks east of the area in question and approximately 300 persons are employed there; the Southern Indiana Gas & Electric Company's plant is approximately ten blocks from the area and employs 100; the Bucyrus-Erie plant is immediately east of the east boundary of the area to be annexed under Ordinance No. 2396 and employs 800 persons; that the industries mentioned are easily accessible to the area in that there are three main through streets: Pennsylvania Expressway, Indiana 62, Claremont, and toward the south Lower Mt. Vernon Road or Broadway; and a street pattern as shown by City's Exhibit No. 3 by which people can go to work without causing cross-town traffic problems; that in his opinion the area is urban in character and is an economic and civic part of the City of Evansville; that there is a public high school near the area and three grade schools, one of which is located in the area sought to be annexed; that the high school is approximately eight blocks from the eastern boundary of the area to be annexed and is readily accessible by streets running into the area; that in proceeding from the area to be annexed into the central portion of the

City of Evansville one would travel on streets that are already in the City of Evansville; that the wide thoroughfare bisects the west area, close to the northern end, is the Expressway and has its eastern terminus in the City of Evansville at approximately First Avenue, being near the central portion of the City.

The court will consider the evidence most favorable to the appellee, together with all the inferences reasonably deducible therefrom and favorable to its cause. We will not weigh the evidence since that function is entrusted to the trial court. The only function this court exercises on appeal is to see if there is some competent evidence, whatever its weight, to support the trial court's primary determinants. *Silverstein* v. *Central Furniture Co., Inc.* (1959), 131 Ind. App. 170, 162 N. E. 2d 690, (rehearing denied, transfer denied); *Haley* v. *Williams, Trustee etc. et al.* (1954), 125 Ind. App. 377, 123 N. E. 2d 921 (rehearing denied); *Noyer, Exr., et al.* v. *Ecker et al.* (1954), 125 Ind. App. 63, 119 N. E. 2d 902, (rehearing denied, transfer denied); *Heffington* v. *Tichenor* (1946), 116 Ind. App. 475, 65 N. E. 2d 500.

After a careful review of the entire record and briefs herein, we are of the opinion that there is sufficient evidence to sustain the findings by the trial court of the primary determinants applied to the annexation set forth in the judgment made by the trial court, and is not contrary to law.

For the reasons given herein, the trial court did not err in overruling appellants' motion for a new trial. Finding no reversible error in the record before us, we therefore affirm the trial court.

Judgment affirmed.

Carson and Prime, JJ., concur.

Faulconer, C.J., concurs in result.

## ON PETITION FOR REHEARING

MARTIN, J.—The appellants having filed their petition for rehearing, the appellee filed its motion to dismiss appellants' petition for rehearing on the ground that it does not comply with Rule 2-22 of the Rules of the Supreme Court.

This rule in part states that:

> "Application for a rehearing of any cause shall be made by petition, *separate from the briefs,* . . . *stating concisely the reasons* why the decision is thought to be erroneous. Such application may, if desired be supported by briefs. . . ." (Our emphasis).

The appellants' petition for rehearing comprises eight (8) paragraphs or specifications. No separate supporting briefs were filed along with the petition. Not only do the appellants, in their petition, state that our decision is erroneous and attempt to present reasons why, they also combine arguments in support of their grounds for rehearing, reiterate arguments on the merits of the case, cite Rules of the Supreme Court as well as case authority, and make reference to portions of their original brief.

Such arguments intermingled with reasons why the decision is thought to be erroneous, all of which are contained within one petition, preclude the conciseness of such reasons as is required by Rule 2-22.

As stated in the case of *Automobile Underwriters, Inc.* v. *Smith* (1961), 241 Ind. 302, 306, 171 N. E. 2d 823,

> "Consistent with the purpose of the rule, alleged errors in the opinion, not supported by a concise statement of the reasons in support thereof, are considered waived."

This court has established the principal that a petition for rehearing must conform to Rule 2-22 and that it must not be argumentative. *McClain's Estate* v. *McClain* (1962), 133 Ind. App. 645, 183 N. E. 2d 842, (rehearing dismissed), 184 N. E. 2d 281; *Maryland Casualty Co. etc.,* v. *Weiss* (1959), 129 Ind. App. 481, 156 N. E. 2d 644, (rehearing dismissed), 157 N. E. 2d 840; *Guthrie* v. *Blakely et al.* (1955), 127 Ind. App. 119, 130 N. E. 2d 62 (transfer denied).

In addition, the Supreme Court of Indiana has held that reasons for an erroneous decision contained within a petition which are not concisely stated separately from the argument are ignored. *Miller, etc.* v. *Ortman, etc., et al.* (1956), 235 Ind. 641, 136 N. E. 2d 17.

In a more recent case it has been recognized that any argument must be submitted separately from the petition for rehearing. See *Automobile Underwriters, Inc.* v. *Smith, supra.*

Since the appellants' petition fails to conform with Rule 2-22 by not concisely stating reasons why the decision is thought to be erroneous separately from given arguments, the appellee's motion to dismiss appellants' petition for rehearing is granted.

Petition for rehearing dismissed.

Faulconer, C. J., Carson and Prime, JJ. concur.

NOTE.—Reported in 204 N. E. 2d 872. Rehearing Denied in 206 N. E. 2d 886.