WALB CONSTRUCTION COMPANY *v.* CHIPMAN, CONSTRUCTION COMMISSIONER, ET AL.

[No. 25,348. Filed March 4, 1931.]

*Louis B. Ewbank* and *Dunten & Dunten,* for appellant.
*Bruce & Bruce* and *George E. Hershman,* for appellees.

ROLL, J.—This was a proceeding by the appellees construction commissioner and the city of Crown Point, a party assessed for the construction of Beaver Dam Ditch No. 3, against the appellant contractor for the construction of said drain, engaged in constructing said drain, to require the contractor to substitute heavier and stronger tile for the tile he was putting in certain parts of Laterals Nos. 3 and 15. To the written statement of objections filed by the appellees, the contractor answered by a denial and a special plea.

The trial court made a special finding of facts, on which it stated conclusions of law to the effect that the contractor should be required to provide tile, having the degree of supporting strength required by table No. 2 of the American Society for Testing Materials for the year

1914 as amended in 1916; and it rendered judgment requiring and ordering the contractor to provide and lay drain tile for laterals Nos. 3 and 15 having such degree of strength.

Appellant's assignment of errors is as follows: (1) The trial court erred in each of its conclusions of law upon its special finding of facts made and filed on October 16, 1926; and (2) the trial court erred in overruling appellant's motion for a new trial. The causes relied upon and stated in the motion for a new trial are: (1) The decision of the court is contrary to law; and (2) the decision of the court is not supported by sufficient evidence.

Certain findings of the special finding of facts are, in substance, as follows:

Finding No. 5. That said drain consists of a drainage system comprising a main ditch and 16 laterals; that it consists of open ditches, most of which are outside of the corporate limits of the city of Crown Point, and tile ditches; that most of the work of constructing said drain has been performed and completed by the contractor except laterals Nos. 3 and 15 thereof, respecting which this litigation has arisen.

Finding No. 6. That lateral No. 3, according to the plans and specifications, was to be constructed and to consist of a salt-glazed vitrified tile as to its entire length, except as to 4,235 feet thereof, which was to be constructed of concrete tile, and 143 feet thereof, which was to be constructed of reinforced pipe. Only that part of said lateral No. 3 that was to be salt-glazed vitrified tile is involved in this matter; that said lateral No. 3 was divided into stations of 100 feet each, and consisted of 113 plus 44 stations. From station 43 plus 75 to station 65, the same was to be constructed of 30-inch salt-glazed vitrified drain tile; from station 65 to station 95, a 27-inch salt-glazed vitrified drain tile; from station 95

to station 113 plus 44, of 24-inch salt-glazed vitrified drain tile.

Finding No. 7. All of lateral No. 15, according to the specifications, was to be constructed of vitrified salt-glazed tile; that, from station 0 to station 20, 27-inch tile was to be used, and, from station 20 to station 37 plus 50, 22-inch tile was to be used, and, from station 37 plus 50 to station 42 plus 74, 18-inch tile was to be used.

Finding No. 8. Laterals No. 3 and No. 15 are situated, for the most part, within the corporate limits of the city of Crown Point. Only 950 feet of lateral No. 15 and the whole of lateral No. 3 are here involved.

Finding No. 11. That, at the time this ditch was established by order of court, certain written specifications, stating the manner in which the work was to be done, and the character of the materials to be used, were adopted, which became a part of the contract of construction between the construction commissioner and the defendant. Said specifications, as far as they are material to the questions here involved, are, in substance, as follows: That the tile in laterals Nos. 1-2-3-4-5-6-10-12-13-14-15 and 16 were to be clay drain tile, except where cement tile was specified. In laterals Nos. 3 and 15, vitrified salt-glazed tile was to be used, except where cement tile was specified. Under the heading "Clay Drain Tile," the specifications provide:

"All tile as above specified as *clay drain tile* shall be known as *Standard Drain Tile*. They shall conform to the requirements of the American Society for Testing Materials, revised Standard Specifications, adopted 1914." (Our italics.)

"All tile shall be sufficiently hard burned or vitrified to afford the degree of support strength, percentage of absorption, and resistance to freezing and thawing as

specified in the physical test requirements as prescribed in the above named Standard Specifications."

Finding No. 12. That the depth of laterals Nos. 3 and 15 as shown upon the profile, vary from two feet to 13.8 feet.

Finding No. 18. Accompanying the Standard Specifications were three tables, only two of which apply to the questions here involved, and so far as they apply to this case, are, in substance, as follows: Table No. 1 purports, among other things, to give the minimum support strength required for farm drain tile, standard drain tile, and extra-quality drain tile, of various dimensions. The supporting strength for farm drain tile of more than 16 inches in diameter is not given. For standard drain tile, the supporting strength for tile 18 inches in diameter is given as 1,400 pounds per lineal foot, and for extra-quality drain tile as 1,800 pounds per lineal foot; for standard drain tile, 22 inches in diameter, 1,600 pounds per lineal foot, and, for extra-quality drain tile, 2,200 pounds per lineal foot; for standard drain tile 24 inches in diameter, 1,700 pounds per lineal foot, and, for extra-quality drain tile, 2,400 pounds per lineal foot; for standard drain tile 27 inches in diameter, the supporting strength is not given, neither is it given for extra-quality drain tile; for standard drain tile 28 inches in diameter, 1,900 pounds per lineal foot, and for extra-quality drain tile, 2,800 pounds per lineal foot; for standard drain tile 30 inches in diameter, 2,000 pounds per lineal foot, and for extra-quality drain tile, 3,000 pounds per lineal foot.

Table No. 2 purports to give the supporting strength per lineal foot that tile should have where placed at various depths and in ditches from one to five feet wide at the top of the tile, or the weight per lineal foot that will be placed upon tile, placed at various depths, in a ditch, one, two, three, four and five feet wide at the top of the tile and back filled with either sand or clay filling.

According to this table, a tile placed in a ditch two feet wide at the top of the tile, and when clay is used as back filling, and when placed at various depths, should have supporting strength as follows: Two feet deep, 280 pounds per lineal foot, four feet deep, 450 pounds per lineal foot; six feet deep, 545 pounds per lineal foot; eight feet deep, 605 pounds per lineal foot; 10 feet deep, 640 pounds per lineal foot; 12 feet deep, 660 pounds per lineal foot.

When placed in a ditch three feet wide at the top of the tile, and clay is used to back fill, said tile should have a supporting strength as follows: Two feet deep, 990 pounds per lineal foot; four feet deep, 1,820 pounds per lineal foot; six feet deep, 2,530 pounds per lineal foot; eight feet deep, 3,110 pounds per lineal foot; 10 feet deep, 3,610 pounds per lineal foot; 12 feet deep, 4,030 pounds per lineal foot.

Finding No. 27. The court finds that the earth where the tile in question was being laid did, in fact, consist of clay.

Finding No. 19. That the tile furnished by the defendant was standard drain tile, and did conform in all respects to the physical test requirements of the American Society for Testing Materials, as shown and prescribed by table No. 1, but did not have the supporting strength as required by table No. 2.

Finding No. 25. The court found, in substance: That while the work of laying tile was progressing, it was found that some of the tile had cracked in the ditch, and the engineer of construction procured four samples of the tile and forwarded them to Purdue University to be tested as to their supporting strength; the result of said test was as follows: One 28-inch tile, supporting strength 2,955 pounds per lineal foot; one 28-inch tile, supporting strength 2,707 pounds per lineal foot; one 26-inch tile, supporting strength 1,920 pounds per lineal foot; one

26-inch tile, supporting strength 2,222 pounds per lineal foot; that the test of said samples showed that they exceeded the minimum support strength, as prescribed by table No. 1, of the Standard Specification, American Society for Testing Materials; that, after the engineer learned of the test so made, he announced to the contractor that the tile he was using conformed to the specifications, and the fault, if any, was that of the engineer who designed the work, in not providing the proper tile, and notified said contractor to proceed with the work; that, subsequently, said engineer learned of his error and learned upon further investigation that table No. 2 of the Standard Specifications did give the weight of the load required to be carried by the tile placed in the trench, and that the tile furnished by the contractor did not have the necessary supporting strength to carry the required load.

The error assigned on the overruling of appellant's motion for a new trial calls in question the sufficiency of the evidence to sustain the findings. Where there is substantial evidence to support the findings, they will not be disturbed on appeal. *Coon* v. *Cronk* (1892), 131 Ind. 44, 30 N. E. 882; *State, ex rel.,* v. *Wimer* (1906), 166 Ind. 530, 77 N. E. 1078. Appellant does not point out any particular finding which it claims is not supported by the evidence. We have reviewed the evidence carefully and are of the opinion that the findings are supported by sufficient evidence.

Appellant took exceptions to the conclusions of law. It is well settled in this state that, by excepting to the conclusions of law upon the facts, the party excepting admits, for the purpose of the exception, that the facts are fully and correctly found. *Conner* v. *Andrews Land, etc., Co.* (1904), 162 Ind. 338, 70 N. E. 376; *Ray* v. *Baker* (1905), 165 Ind. 74, 74 N. E. 619; *Barney* v. *Yazoo, etc., Land Co.* (1913), 179 Ind.

337, 101 N. E. 96; *Brown* v. *Guthrie, Auditor* (1916), 185 Ind. 669, 114 N. E. 443; *McCleery* v. *Zintsmaster* (1916), 187 Ind. 37, 114 N. E. 625.

From the facts found as above set out, it is clear that the major question for our decision is: Does the specification require the contractor to use tile in the construction of laterals Nos. 3 and 15, with supporting strength sufficient to withstand the load placed upon them as specified by table No. 2 of the American Society for Testing Materials, Standard Specifications 1914, as amended 1916, or, does the use of standard drain tile which meet the test as prescribed by table No. 1 fulfill the requirements of the specifications for said drain?

The cardinal rule in the interpretation of contracts is to ascertain the intention of the parties, as expressed in the language used, and to give effect to that intention, if it can be done consistent with legal principles. *Durland* v. *Pitcairn* (1875), 51 Ind. 426; *Beard* v. *Lofton* (1885), 102 Ind. 408, 2 N. E. 129; *Warrum* v. *White, Admr.* (1909), 171 Ind. 574, 86 N. E. 959. In construing a contract, the whole contract should be taken into consideration, and each part construed in the light of its relation with the whole context of the agreement. 6 R. C. L. 837, 838.

We learn from the court's special findings that the profile showed the depth of laterals Nos. 3 and 15 varied from two feet to 13.8 feet; and from finding No. 6 that the ditch in some places would be about three feet wide at the top of the tile. So it is therefore apparent that the contractor, before he submitted his bid, had before him such information that he could determine what strength the tile should have when placed in laterals Nos. 3 and 15 to support the weight that would be placed upon them. This information was set forth in table No. 2, of the American Society for Testing

Materials, Standard Specifications, adopted in 1914, as amended in 1916. Can we say then, that the specifications required the contractor to use tile that afforded supporting strength sufficient to bear the weight placed upon them? We are of the opinion that this question must be answered in the affirmative. When we take into consideration the object of the parties in entering into the contract, the facts as to the depth of the tile in laterals Nos. 3 and 15, as disclosed by the profile of said ditch, and the provision of the specifications which says that: "All tile shall be sufficiently hard burned or vitrified to afford the degree of support strength . . . as specified in the physical test requirements as prescribed in the above named Standard Specifications," and, upon examination of the said Standard Specifications, we find two tables, the first of which gives the minimum supporting strength of Standard Drain Tile, and the second table gives facts which show that Standard Drain Tile does not have the supporting strength to withstand the weight that would be placed upon tile used in laterals Nos. 3 and 15, we are forced to conclude that it was the intention of the parties that the contractor use tile in laterals Nos, 3 and 15 that afforded supporting strength as set out in table No. 2. To hold otherwise would be to nullify the provision in the specifications last above quoted, and thus leave the one provision in the specifications which specifies Standard Drain tile, which clearly has reference only to places where clay drain tile is specified. No part of a contract will be treated as redundant or as surplusage if a meaning reasonable and consistent with other parts of the contract can be given it. *Heywood* v. *Heywood* (1856), 42 Me. 229, 66 Am. Dec. 277; *German Fire Ins. Co.* v. *Roost* (1897), 55 Ohio State 581, 45 N. E. 1097, 36 L. R. A. 236, 60 Am. St. 711; *Blanding* v. *Columbia* (1858), 10 Rich. Eq. (S. C.) 573, 73 Am. Dec. 102. It is true, as stated

by appellant in his third paragraph of answer, "that the specifications did not prescribe the exact character of the tile any more than that they were to be Standard Drain Tile and Vitrified and Salt-Glazed, and that they were to be of sufficient strength to bear the weight of earth and materials prescribed by said American Society for Testing Materials for the year of 1914, as amended or modified in the year of 1916." Reference to table No. 1 and No. 2 of said Standard Specifications certainly makes the meaning of this quotation clear and definite. By the special finding of facts, table No. 1 and table No. 2, of the standard specifications adopted by the American Society for Testing Materials in 1914, as revised in 1916, were a part of the specifications. These tables were, therefore, a part of the contract between said ditch commissioner and the contractor as much as if written in full therein.

It was stated by counsel for appellant in oral argument that the ditch commissioner and the contractor at the time the contract for the construction of said drain was entered into, and for a long time thereafter, did not have the 1916 revision of said standard specifications, but had a later revision which did not contain said table No. 2, and that neither said construction commissioner nor the contractor knew of said table No. 2 until the controversy over the kind of tile to be used in said laterals Nos. 3 and 15 arose, when the 1916 revision of said specification was obtained. If the statement of appellant's counsel be true, the uncertainty in the contract urged by him, was the result of appellant's failure to read all of the contract, rather than from any uncertainty in the contract itself. Courts cannot relieve a party from the terms of a contract so entered into, as he is bound to know the contents of the contract which he signs. *Keller* v. *Orr* (1886), 106 Ind. 406, 7 N. E. 195; *New York, etc., R. Co.* v. *Difendaffer* (1903),

125 Fed. 893; *Norris* v. *Scott* (1892), 6 Ind. App. 18, 32 N. E. 103; *Wood* v. *Wack* (1903), 31 Ind. App. 252, 67 N. E. 562; *Clodfelter* v. *Hulett* (1880), 72 Ind. 137; *Dutton* v. *Clapper* (1876), 53 Ind. 276; *Beist* v. *Sipe* (1896), 16 Ind. App. 4, 44 N. E. 762.

If appellant signed the contract for the construction of said drain according to the specifications, and, by reason of not having the standard specifications of the American Society for Testing Materials, adopted in 1914 and revised in 1916, which contained table No. 2, but had a later edition of said standard specifications that did not contain said table, and, for that reason, did not know of the existence of table No. 2, and did not know the effect of the specifications when read in the light of said table No. 2, he can blame no one but himself, but must perform the contract as it was in fact written.

Appellant contends that the parties have construed the contract herein, and that this court should enforce the contract as thus interpreted. This contention is based upon the assumption that the contract is ambiguous or uncertain. Since we have determined this question against the position taken by appellant, the rule of law so contended for does not apply.

If the meaning of a contract is clear, its effect will not be controlled by an erroneous construction given it by the parties themselves. *Ketcham* v. *Brazil Block Coal Co.* (1883), 88 Ind. 515; *Morris* v. *Thomas* (1877), 57 Ind. 316; *Gardner* v. *Caylor* (1900), 24 Ind. App. 521, 56 N. E. 134; *Lemcke* v. *Hendrickson* (1915), 60 Ind. App. 323, 330, 110 N. E. 691. In the case of *Morris* v. *Thomas, supra,* the court said: "In such a case, it is certainly not the province of the courts, by any rules of construction, to make another and entirely different contract for the parties from the one they made for themselves."

The lower court did not err in its conclusions of law, and we find no error in overruling appellant's motion for a new trial.

Judgment affirmed.