THE ILLINOIS PIPE LINE COMPANY *v.* BROSIUS ET AL.

[No. 15,984.  Filed April 11, 1939.]

*Simmons & Simmons, Paul Brown* and *A. ·Walter Hamilton,* for appellant.

*Paul R. Benson, Chauncey W. Duncan, Anderson & Mayfield, Douglas J. Morris.* and *N. Guy Jones,* for appellees.

LAYMON, J.—Appellees Wallace G. Brosius, as landlord, and Tyre F. Pheneger, his tenant, sought by this action to recover damages to crops and fences by reason of the construction of a pipe line by appellant across the land owned by Brosius. The action was based upon a written contract executed by the parties in December of 1928, by the terms of which and in consideration of the sum of $46 payable to appellee Brosius and the sum of $1 payable to appellee Pheneger, appellant was granted a right of way to lay, maintain, and operate a pipe line and telegraph or telephone lines across 154 acres of land owned by Brosius in Henry County, Indiana.

There were sundry pleadings. These pleadings are not essential to the determination of the question presented in this appeal and need not be set forth. The issues were submitted for trial to a court and jury,

resulting in a verdict in favor of appellee Brosius in the sum of $885 and in favor of appellee Pheneger in the sum of $800, upon which judgment was accordingly rendered. In due time appellant filed its motion for a new trial, which was overruled. The only error assigned by appellant is the action of the trial court in overruling this motion.

The contract between appellant and appellees was prepared by appellant on a printed form and contained the following provision for paying damages to crops: "The Illinois Pipe Line Company, which hereby agrees to pay any damages which may arise to crops or fences from the laying, erecting, maintaining, operating, or removing of said pipe, . . ." The question presented in this appeal involves the proper interpretation to be placed upon this provision of the contract.

Appellant contends that the only damages allowable in this action are those which the appellant, by the terms of the contract, agreed to pay; that, by the terms of said contract, appellant was only to pay to appellees such damages to the crops which were growing on said real estate at the time of the construction of the pipe line; that appellant constructed its pipe line, pursuant to said contract, across the land in question in the months of February and March, 1929, at a time when there were no crops growing on said land; and that therefore there could be no recovery under the contract for damages to crops. Appellant further insists that failure of the crops to mature properly in the years 1929, 1930, 1931, and 1932, was a result of injury to the fertility of the soil occasioned by the construction of said pipe line upon said real estate and that appellant, in said contract, did not agree to pay for damages to the fertility of the soil.

The trial court properly instructed the jury that the only damages recoverable were damages to crops and

fences as agreed to in the contract between the parties and, upon the subject of damages, interpreted the contract to include damage to crops subsequently planted, which damage could be traced directly to and as a proximate result of the laying and erecting of the pipe line by appellant. Evidence was admitted to this effect, and the jury was instructed accordingly.

Appellant and appellees, in their briefs, have referred to and quoted several well-established rules adopted and followed by the courts in the interpretation and construction of contracts.

The rules that a contract will be construed strictly against the party preparing it and that the court will not make the contract for the parties are so well established that they are no longer questioned.

The construction of a written instrument to be adopted is the one which appears to be in accord with justice and common sense and the probable intention of the parties in the light of honesty and fair dealing and to accomplish the end and serve the purpose intended by the parties.

The intent of the parties at the time the contract was entered into is the controlling factor in determining what the agreement of the parties actually was. See *Beard* v. *Lofton* (1885), 102 Ind. 408, 2 N. E. 129; *Modern Woodmen, etc.* v. *Miles* (1912), 178 Ind. 105, 97 N. E. 1009; *Walb Construction Co.* v. *Chipman* (1931), 202 Ind. 434, 175 N. E. 132.

Contracts should neither, on the one hand, be so narrowly or technically interpreted as to frustrate their obvious design nor, on the other hand, be so loosely or inartificially interpreted as to relieve the obligor from a liability fairly within the scope or spirit of their terms. Generally speaking, the cardinal rule in the interpretation of contracts is to ascertain the intention of the parties and to give effect

to that intention if it can be done consistently with legal principles. Whatever may be the inaccuracy of expression or the inaptness of the words used in an instrument in a legal view, if the intention of the parties can be clearly discovered, the court will give effect to it and construe the words accordingly. This does not mean that the courts should attempt to ascertain the actual mental process of the parties to a particular contract, for the law presumes that the parties understood the import of their contract and that they had the intention which its terms manifest. In ascertaining or arriving at the intention of the parties, we are not unmindful of the rule that the interpretation of an agreement does not include its modification or the creation of a new or different contract. The courts have no right to make a contract for the parties. The rule of liberal construction does not justify the creation of a contract for the parties which they did not make themselves or the imposition upon one party to a contract of an obligation not assumed by its terms.

It is one thing for the court to effectuate the intention of the parties to the extent to which they may have, even imperfectly, expressed themselves, and another to add to the instrument all such covenants as upon a full consideration the court may deem fitting for completing the intentions of the parties, but which they, either purposely or unintentionally, have omitted. The former is but the application of a rule of construction to that which is written; the latter adds to the obligations by which the parties have bound themselves, and is of course quite unauthorized, as well as liable to great practical injustice in the application.

A written instrument should ordinarily be interpreted to mean what on its face it purports to mean, unless some good reason can be assigned to show that the words used can be understood in a different sense. Words are to receive their plain and

literal meaning, even though the intention of the party drawing the contract may have been different from that expressed. In the instant case, while the parties contend that there is doubt as to their intention, nevertheless, language in its simplest form was employed to express what they intended.

Another familiar rule in the interpretation of contracts is that words will be given their ordinary meaning, when nothing appears to show that they are used in a different sense, to the end that a liberal and fair construction will be given to the words, either singly or in connection with the subject-matter.

Appellant, in its brief, states: "The whole question before the court may be summed up in the question, 'How much damage did the defendant agree to pay?' "

In examining the provision of the contract in controversy, we find that appellant agreed to pay *"any damages* which may arise to crops or fences from the laying, erecting," etc. (Our italics.) The phrase "any damages" is sufficiently broad to include both direct damages—such as follow immediately upon the act done, and consequential damages—such as are the necessary and connected effect of the act complained of and flow from some of its consequences or results, though to some extent depending upon other circumstances. The fact that such damages were restricted by the terms of the contract to the laying and constructing of the pipe line is not questioned. The question arises as to what crops were intended by the parties.

The parties employed the word "crops" as used in its ordinary meaning and without any modification or reference as to the time of existence, so that the word might refer to any crop or crops.

It can fairly be assumed from the provisions of the instrument, taken as a whole, that it was within the

contemplation of the parties, when making the contract, that in all probability the laying, erecting, etc., of the pipe line would result in damage to certain crops which might afterwards be planted, grown, and harvested, and that such damage would be directly traceable to the act of laying, erecting, etc., the pipe line. Such consequential injury was in the minds of the parties, and the parties evidently had in mind that appellant was to respond to appellees for all such damages. If it were the intention of appellant to restrict its liability for damages to a particular crop, it should have been so stated when the contract was prepared. We think it sufficiently expressed in the language of the contract that appellant was to compensate appellees for damages to crops, whether such crops were growing at the time of the construction of the pipe line or were subsequently planted. This is not an arbitrary or unreasonable view, nor is it a strained interpretation of the meaning of the provision in controversy.

To give effect to the contention of appellant would, in our judgment, be interpreting the contract beyond the ordinary meaning of the words employed by the parties in expressing their intention.

Appellant makes no contention that the damages recovered, on account of damage to the crops subsequently planted, were not directly and proximately traceable to the act of laying and constructing said pipe line, but to the contrary concedes that there was sufficient evidence before the trial court to warrant such conclusion.

Appellant insists that to allow damages to crops planted subsequent to the laying of the pipe line would require appellant to respond in damages for injury to the soil, and that since the contract did not provide for the payment of damages to the "fertility of the soil," such damages should not be allowed.

It has been pointed out, and we think correctly so,

that the damages to the crops were occasioned by the laying of the pipe line in such a manner as to damage and impair certain tile drains on the land, thus preventing the carrying away of water and the draining of the land upon which appellees attempted to raise their crops. Damages are recoverable under the provisions of the contract for loss or injury to crops planted subsequently to the construction of the pipe line, if and when the damages can be ascertained and determined as flowing directly and proximately from the laying of the line. The measure of damages may be said to be similar to that of tort, but if so, it was the measure agreed upon by the parties in their contract, and there is no reason for not enforcing it.

The trial court correctly interpreted the contract, and there was no error in overruling appellant's motion for a new trial.

Judgment affirmed.