FORT WAYNE BANK BUILDING, INC. AND THOMAS F. MARSHALL *v.* BANK BUILDING AND EQUIPMENT CORPORATION OF AMERICA, MOSS ENGINEERING CORPORATION.

[No. 3-1272A92.  Filed April 15, 1974.]

*John F. Lyons, J. A. Bruggeman, Barrett, Barrett & Mc-Nagny,* of Fort Wayne, for appellants.

*Milford M. Miller, Edward L. Murphy, Jr., Livingston, Dildine, Haynie & Yoder,* of counsel, of Fort Wayne, for appellee Bank Building and Equipment Corporation of America.

HOFFMAN, C.J.—This is an appeal from a judgment against Fort Wayne Bank Building, Inc. and Thomas Marshall (Owner) for the cost of materials and labor used in the Fort Wayne National Bank Building. The building was partially constructed by appellee Bank Building and Equipment Corporation of America (Contractor) who obtained the materials and labor in issue from a subcontractor.

After the Contractor stopped work on the building, it reached a settlement with the Owner as to compensation for the work it completed, and obtained a release from further obligations under their contract. Under the terms of this "settlement agreement" executed by the parties, the Owner agreed to present to the Contractor releases from all subcontractors used by the Contractor on the project, agreed to pay an amount of money to the Contractor, and assumed "full and complete responsibility to pay all amounts due * * * subcontractors" used by the Contractor. And, the Owner agreed to indemnify the Contractor from any claims against it arising out of the construction of the building. One witness was allowed to testify that the indemnification provision was inserted because this arrangement assured the Contractor that it would not later be held liable for subcontract work ordered by the Owner, which had reserved the right to subcontract certain portions of the work.

Subsequent to the execution of the terms of the settlement agreement, a subcontractor used by the Contractor successfully sued it on a claim arising from the construction of the building. The contractor impleaded the Owner as a third-party defendant, alleging the Owner was liable to indemnify the Contractor under the "settlement agreement." After a trial to the court, a judgment was entered against the Owner on the third-party complaint. The Owner appeals from the denial of its motion to correct errors.

The controversy at trial and on appeal results from the divergent constructions placed upon the "settlement agreement" by the parties. A review of the Indiana law pertaining

to the construction of such agreements will quickly resolve this controversy.

The "settlement agreement" reached in the case at bar is, in the eyes of the law, a contractual modification of the parties' original construction contract. The law is clear that parties competent to contract may mutually so modify or change their contracts. *Commercial Acceptance Co.* v. *Walton* (1931), 93 Ind. App. 136, 176 N.E. 244.

Since modifications such as that in question in the case at bar are themselves contractual undertakings, the law of construction of contracts must determine the outcome of any controversy as to their meaning. The foremost rule and guiding purpose of this body of law is to ascertain the intention of the parties from their expression of it, and to give effect to that intention, if it can be done consistently with legal principles. *Walb Construction Co.* v. *Chipman* (1931), 202 Ind. 434, 175 N.E. 132; *McClain's Estate* v. *McClain* (1962), 133 Ind. App. 645, 183 N.E.2d 842.

Although evidence of the intent of the parties which is extrinsic to a contract may be properly considered by a court where fraud, mistake, illegality, duress or undue influence are shown, such evidence is not admissible where these are not shown and where the terms of the instrument are susceptible of a clear and unambiguous construction. *Hauck* v. *Second National Bank of Richmond* (1972), 153 Ind. App. 245, 286 N.E.2d 852 (transfer denied).

The following portions of the "settlement agreement" in the case at bar speak to the liability of the Owner to indemnify the Contractor against subcontractor's claims:

> "*Owner-Architect assumes full and complete responsibility to pay all amounts due to persons, firms and corporations who were subcontractors or suppliers to Bank Building* [the Contractor] *on the Fort Wayne National Bank Building project* ('the building project') *and Owner-Architect further agrees to furnish to Bank Building full and*

complete releases from any such subcontractors and suppliers *thereby releasing Bank Building and Hartford* [the surety] *from any and all claims arising from work and/or materials furnished to the building project. * * * *.*

\* \* \*

*"Owner-Architect hereby agrees to indemnify and hold harmless Bank Building* and Hartford and [sic] *from any claims by any third persons arising out of the* design and *construction of the building, * * * *."* (Emphasis supplied.)

This language cannot be said to be ambiguous or uncertain.

In *McClain's Estate* v. *McClain, supra,* the court discussed the rules of construction to be employed in gleaning the intent of the parties from an unambiguous contract and, at 655-656 of 133 Ind. App., at 847-848 of 183 N.E.2d, stated:

"The intention of the parties must be gathered from the whole contract rather than isolated parts or fragments. The case of *Ahlborn et al.* v. *City of Hammond* (1953), 232 Ind. 12, 111 N.E.2d 70, states the rule in this manner:

'It is well settled that words, phrases, sentences, paragraphs . . . of a contract cannot be read alone. . . . The intention of the parties must be gathered from the entire contract. . . .'

"To determine the meaning to be given the words of the agreement in question, the rule stated in *Haworth* v. *Hubbard et al.* (1942), 220 Ind. 611, 44 N.E.2d 967 might well serve as the accepted guide. The rule is stated as follows:

'It is everywhere agreed that words used in a contract are to be given their usual and common meaning unless, from the entire contract and the subject matter thereof, it is clear that some other meaning was intended. . . .'

"Another rule of construction applicable to the agreement herein is set forth in *Sindlinger et al.* v. *Dept. of Financial Institutions* (1936), 210 Ind. 83, 199 N.E. 715, wherein the Court said:

'A liberal or technical construction of an isolated or special clause should not be indulged to defeat the true meaning of a contract. The true meaning of a contract is to be ascertained from a consideration of all of its provisions in order to carry out the true intention of the parties gathered from the whole instrument. . . .'

"It is not the purpose of the law to abrogate the terms and provisions of contracts by construction where the language is clear and unambiguous but rather to enforce it as entered into by the parties. This rule is more precisely stated in *Gaw* v. *LaPorte Corp.* (1956), 126 Ind. App. 143, 130 N.E.2d 790 as follows:

'A court is not at liberty to revise a contract while professing to construe it. Neither does it have the right to make a contract for the parties, that is, a contract different from that actually entered into by them. . . .' "

Furthermore, if the meaning of a contract is clear and unambiguous on its face, its effect will not be controlled by an erroneous construction placed on the agreement by the parties. This is because such extrinsic evidence may not be considered where no ambiguity exists in the contract. *Walb Construction Co.* v. *Chipman, supra; Morris* v. *Thomas* (1877), 57 Ind. 316; *Smith* v. *Mercer* (1948), 118 Ind. App. 575, 79 N.E.2d 772. Thus, where the language of the contract is plain as to the intent of the parties, and there is no defect asserted in the formation of the contract, that language is conclusive. *Reed et al.* v. *Lewis, et al.* (1881), 74 Ind. 433, 439; *Miller* v. *Frankfort Bottle Gas, Inc.* (1964), 136 Ind. App. 456, 202 N.E.2d 395.

The application of the aforestated rules to the facts in the case at bar is apparent. Since the appellant-Owner alleges no defects in the formation of the contract, it must be presumed that there are none; *omnia praesumuntur rite et solemniter esse acta donec probetur in contrarium.* Thus, the clear language of the "settlement agreement" must speak for itself, not glossed by any evidence of the circumstances and motives surrounding the transaction.

Upon trial of the instant case, one witness was permitted to testify as to such circumstances and motives. Inasmuch as judgment was entered against the party offering such evidence, it must be concluded that the trial court as the trier of fact either disbelieved the lone witness or, in its discretion, allowed such testimony to proceed to determine if any portion of it

would be admissible and then properly disregarded it in reaching its judgment.

Thus, the only evidence considered by the trial court relevant to the substance of the parties' agreement was the "settlement agreement" itself. The judgment of the trial court effectuating the terms of the agreement had a proper basis in law and in the evidence presented to it.

In *The Illinois Pipeline Co.* v. *Brosius* (1938), 106 Ind. App. 390, at 394, 20 N.E.2d 195 at 197, it is stated:

"It is one thing for the court to effectuate the intention of the parties to the extent to which they may have, even imperfectly, expressed themselves, and another to add to the instrument all such covenants as upon a full consideration the court may deem fitting for completing the intentions of the parties, but which they, either purposely or unintentionally, have omitted. The former is but the application of a rule of construction to that which is written; the latter adds to the obligations by which the parties have bound themselves, and is of course quite unauthorized, as well as liable to great practical injustice in the application."

The "settlement agreement" in the case at bar also provides, in part, as follows:

"On or before May 23, 1970, Owner-Architect will pay to Bank Building the sum of $325,000.00, in cash. If said sum is not paid on or before May 23, 1970, it is stipulated and agreed that judgment in said amount shall forthwith be entered by the Court in the action involving these parties designated Civil No. 2024 in the United States District Court for the Northern District of Indiana and the lien arising therefrom shall forthwith be foreclosed without intervention defense [sic] by Owner-Architect against the premises knows [known] as the Fort Wayne National Bank Building project (hereinafter referred to as 'the building project') located at Berry and Calhoun Streets, Fort Wayne, Indiana."

This provision was inserted in addition to the indemnification and release provisions of the "settlement agreement" quoted above. It in no way qualifies the continuing duty of the Owner to "pay all amounts due to persons, firms and

corporations who were subcontractors or suppliers to Bank Building [the Contractor] on the Fort Wayne National Bank Building project * * *" as agreed in the aforementioned indemnification provisions. Thus, by its terms, the operation of the above quoted entry of judgment provision of the agreement did not preclude the Owner from further liability under the agreement. And, due to the continuing possibility that actions might be brought by the Contractor's subcontractors, any judgment so entered would not have operated as a *res judicata* bar to such later actions. Thus, since the Owner would have been liable to indemnify the Contractor for later actions which were successful even after the operation of the entry of judgment provision, the construction placed on the agreement by the trial court cannot be said to produce a result more harsh than the consequences of a breach of the settlement terms of the agreement.

The construction placed on the "settlement agreement" by the trial court was in accord with justice, rationality, and the probable intent of the parties, in light of honesty, fair dealing, and the purpose of the parties. See: *The Illinois Pipeline Co.* v. *Brosius, supra.*

No reversible error having been shown, the judgment of the trial court must be affirmed.

Affirmed.

Garrard and Staton, JJ., concur.

NOTE.—Reported at 309 N.E.2d 464.