Joseph F. PISKOROWSKI, Appellant
(Plaintiff Below),

v.

SHELL OIL COMPANY, a Delaware Corp., Appellee (Defendant Below).

No. 3-778A176.

Court of Appeals of Indiana,
Third District.

April 21, 1980.

Rehearing Denied May 30, 1980.

Dominic P. Sevald, Hammond, Joseph L. Skozen, Skozen & Tebik, Munster, for appellant.

James J. Nagy, Eichhorn, Eichhorn & Link, Hammond, for appellee.

STATON, Judge.

On August 31, 1965, Shell Oil Company and Jospeh F. Piskorowski entered into a lease agreement whereby Shell agreed to rent Piskorowski's property located at the southeast corner of 139th Street and Hohman Avenue in Hammond, Indiana. The lease agreement was for a ten year term, but included provisions by which Shell could terminate its leasehold interest in Piskorowski's property prior to the expiration of the ten year period.

In January of 1967, Shell, acting under the auspices of the termination provisions, notified Piskorowski that it was exercising its option to cancel its rights and obligations under the lease effective May 1, 1967. Shell's cessation of rental payments on that date prompted Piskorowski to initiate three separate lawsuits in Lake Superior Court. Through the procedural vehicles of venue and consolidation, jurisdiction over Piskorowski's various actions was transferred to the Porter Superior Court, where Shell's Motion for Summary Judgment on the consolidated causes was granted. Piskorowski here appeals from that decision, and raises the following issues for our review:

(1) Whether the Porter County Superior Court had jurisdiction to render Summary Judgment on cause number 576–581 when the pleadings and transcript had not been physically transferred to the court?

(2) Whether genuine issues of material fact existed which made Summary Judgment improper.

We affirm.

## I.

### Cause Number 576–581

In 1967, Piskorowski filed two separate breach-of-contract actions against Shell Oil Company in Lake Superior Court. The parties subsequently stipulated that the two causes be venued to Porter Superior Court. In 1969, the stipulations were effectuated; the Lake Superior Court ordered the actions venued, and the transcripts of each cause were physically transferred to the Porter Superior Court.

In 1976, Piskorowski filed a third suit against Shell wherein Piskorowski coupled his previous allegation that Shell had breached the lease agreement of the parties with the assertion that, in consideration of Shell's performance of its leasehold obligations, Piskorowski had constructed a service station on his property. The suit was filed in Lake Superior Court and assigned cause number 576–581. Shell responded to the complaint with a Motion for Summary Judgment, wherein it prayed alternatively that the Lake Superior Court dismiss the action or order the cause joined with those suits already pending in Porter Superior Court.

Pursuant to the discretionary power vested in it by Ind. Rules of Procedure, Trial Rule 21(B),[1] the Lake Superior Court ordered that cause number 576–581 be "consolidated" with cause numbers 69 PSC 1243 and 1290 pending in Porter Superior Court. As part and parcel of its order, the Lake Court directed that the case be transferred to the Porter Court; *inexplicably, however, the transcript and pleadings of cause 576–581 were never physically transferred to the Porter Superior Court.*

Shell Oil Company then filed a Motion for Summary Judgment in the Porter Superior Court. The Porter Court granted that motion and entered identical orders to that effect in the case files for the two causes which had been venued to its jurisdiction in

---

1. TR. 21(b) reads in pertinent part:

 "The court may transfer the proceedings to the proper court if it determines that venue or authority of the court is dependent upon a claim, or a claim by or against a particular party which appears from the pleadings, or proves to be a sham or made in bad faith; *and if another action is pending in this state by or against a person upon the same claim at the time he becomes a party,* the court may dismiss the action as to him, or in its sound discretion, *it may order all or part of the proceedings to be consolidated with the first pending action.*" (Emphasis added.). Piskorowski has not challenged the applicability of TR. 21(B) to the circumstances at hand.

1969. In the prefatory sections of its identical orders, the Court noted three consolidated causes were before the Court, among them Cause 576–581. The order reads in relevant part:

```
"JOSEPH F. PISKOROWSKI, )
 Plaintiff )
 )
 vs. ) CAUSE NO. 69 PSC 1243
 )
"SHELL OIL COMPANY, a )
Delaware Corporation, )
 Defendant )

"JOSEPH F. PISKOROWSKI, )
 Plaintiff )
 )
 vs. ) CAUSE NO. 69 PSC 1290
 )
"SHELL OIL COMPANY, a )
Delaware Corporation, )
 Defendant )
```

### "FINDINGS OF FACT AND CONCLUSIONS OF LAW

"These causes being at issue on plaintiff's complaint and defendant's answer thereto (these causes being comprised of Cause No. 167–610 filed in the Lake Superior Court on the 2nd day of August, 1967, Cause No. 167–633 filed in the Lake Superior Court on the 10th day of August, 1967, and Cause No. 576–581 filed in the Lake Superior Court on the 25th day of June, 1976) and said causes having been consolidated for the purposes of hearing and trial herein, and the defendant having filed a Motion for Summary Judgment in said causes, and argument having been heard thereon, and the Court having taken said motion under advisement, the Court not finds:

"That there is no genuine issue as to any material fact herein and specifically that:

> \* \* \* \* \* \*

"Therefore, the defendant, Shell Oil Company, is entitled to judgment as a matter of law on plaintiff's complaint and defendant's answer thereto."

By expressly including the action under cause number 576–581 in its summary judgment, the Porter Superior Court appeared to adjudicate the action without having the pleadings and other court records before it. Such is not the case, however. While the Lake County Court file for cause 576–581 was never transferred to the Porter Superior Court, copies of the pleadings, motions, and other matters filed in cause 576–581 were presented to the Porter Court for its consideration.[2]

No questions with respect to the paradoxical disposition of cause 576–581 were raised in Piskorowski's subsequent Motion to Correct Errors, which was overruled by the Porter Court. Eight months later, however, Piskorowski filed—in *Lake* Superior Court—a motion to reset cause 576–581 for trial. The motion was predicated upon the fact that the transcript and pleadings had never been physically transferred to the Porter Superior Court. The motion was not ruled upon by the Lake Superior Court; rather, the Lake court certified the transcript and pleadings of cause 576–581 to this Court for purposes of Piskorowski's appeal.

Piskorowski does not contend otherwise. Rather, his contention on appeal is that inasmuch as the pleadings and transcript filed in the Lake Superior Court were never physically transferred to the Porter Superior Court, the court lacked jurisdiction to adjudicate the action. Consequently, he argues, the summary judgment granted Shell is void insofar as cause 576–581 is concerned. Shell maintains, however, that Piskorowski's failure to raise the jurisdictional issue in his Motion to Correct Errors constitutes a waiver of the right to raise the issue on appeal.[3]

---

2. At oral argument, counsel for appellee assured this Court that copies of the pleadings and other matters filed in cause 576–581 were presented to the Porter Superior Court. While we do not approve of the unorthodox procedure by which the merits of cause 576–581 were presented to the Porter Court, it appears that "the merits of the cause have been fairly tried and determined below." Ind. Rules of Procedure, Appellate Rule 15(E).

3. In addition, Shell has suggested that "If the appellant [Piskorowski] wanted the file in Lake County physically transferred to the clerk's office in the Porter Superior Court, he should have taken it upon himself the responsibility for doing so, and having failed to do so, he has

In their briefs, both parties have somewhat confused the jurisdictional aspect of the case-at-bar. Piskorowski has argued that the nature of jurisdiction involved is subject matter jurisdiction—and hence not susceptible to waiver—or alternatively, that jurisdiction over the particular case is at issue. Shell, on the other hand, has maintained that the question is a matter of jurisdiction over the person—and that waiver rules are thereby applicable.

The confusion is somewhat understandable; our research reveals no governing precedent for the procedural circumstances present here. An inter-county consolidation of cases, however, is not unlike a change of venue, insofar as our purposes here are concerned. In either instance, a transfer of power to adjudicate the case occurs, together with a physical transfer of the case transcript and pleadings. Accordingly, we conclude that an inter-county consolidation of cases involves jurisdiction over the particular case, as per analogous venue principles. *State v. Superior Court of Marion County* (1955), 235 Ind. 151, 128 N.E.2d 874, 877; *Indiana State Fair Board v. Hockey Corp. of Amer.* (1975), 165 Ind.App. 544, 333 N.E.2d 104, 114.

The failure to physically transfer the transcript and pleadings of Cause Number 576–581, however, did not affect the Porter Superior Court's jurisdiction over the particular case; rather, it affected only the Lake Superior Court's jurisdictional power to act in Cause Number 576–581. Again, the rationale for this conclusion springs from analogous venue principles.

As a general rule, a trial court loses jurisdiction over a particular case when a proper motion for a change of venue is filed. *State ex rel. Kealing v. Clay Circuit Court* (1934), 207 Ind. 259, 263, 192 N.E. 423. The immediacy of this general loss of jurisdiction stems from the fact that the Court has a *duty* to grant the motion; each party to a civil action enjoys a right to one change of venue. Ind.Rules of Procedure, Trial Rule 76. The court in which a change of venue motion is filed, however, retains jurisdiction to make any necessary emergency interlocutory orders until that time when the case pleadings and transcript are physically transferred to the court to which venue is changed. *Indianapolis Dairymen's Co-op v. Bottema* (1948), 226 Ind. 260, 265–66, 79 N.E.2d 409, 411–12; *Indiana State Fair Board v. Hockey Corp. of Amer., supra.*

Of course, consolidation, unlike venue, is a matter in which the trial court exercises discretion. Arguably, a motion for consolidation would not generally divest the court of its jurisdiction to act in a case, as occurs when a motion for a change of venue is filed. That question is not before us, however, and we do not reach it.

We simply hold that when the Lake Superior Court *ordered* cause 576–581 consolidated with cause numbers 69 PSC 1243 and PSC 1290 already pending in Porter Superior Court, the Lake Court lost jurisdiction over the case.[4] When that order was rendered, then, jurisdiction over the particular case (cause 576–581) passed to the Porter Superior Court.

It is well-settled that jurisdiction over the particular case is a matter which can be waived by the failure to make a specific and timely objection in the trial court. *Board of Trustees, etc. v. City of Fort Wayne* (1978), Ind., 375 N.E.2d 1112, 1117. Piskorowski has thus waived his right to contest the Porter Court's jurisdiction over cause 576–581 by his failure to raise the issue at the trial court level. Consequently, the Porter Court had the juris-

waived this argument." We reject this contention. The physical transfer of the pleadings and transcript is a purely ministerial duty of the court. *Hutchinson v. Wheeler* (1968), 251 Ind. 386, 241 N.E.2d 261, 263. As the Court stated in *Hutchinson*: "[O]nce the movant has paid the costs associated with the change of venue, he has a right to expect that the entire

record . . . will be certified to the new forum." *Id.* Here, Shell, not Piskorowski, was the movant; he could not have any duty related to the transfer of the files.

4. In the disposition of the jurisdiction issue, this Court has used change of venue rationale.

dictional power to adjudicate Shell's Motion for Summary Judgment on cause number 576–581.

## II.

### Genuine Issues of Material Fact

In granting Shell's Motion for Summary Judgment on the actions, the trial court made the following findings of fact:

"That there is no genuine issue as to any material fact herein and specifically that:

"1. There is nor genuine issue of fact as to there being a lease between the parties, said lease being dated August 13, 1965, for the following described real estate, to-wit:

"Lots 1, 2, and 3 in Block 1 as marked and laid down on the recorded plat of Steel Manor in the City of Hammond, Lake County, Indiana, as the same appears on Plat Book 19, Page 20, in the Recorder's Office of Lake County, Indiana, wherein the plaintiff Joseph F. Piskorowski, is lessor and the defendant, Shell Oil Company, is leasee.

"2. *There is no genuine issue of fact as to the provision of said lease which provides for termination of the lease between the parties by the leasee at any time by giving notice.*

"3. There is no genuine issue of fact as to whether the defendant gave notice to plaintiff of the termination of said lease.

"4. There is no genuine issue of fact and the defendant has made all payments under the terms of said lease for the leasing of said premises until said lease was terminated effective May 1, 1967, and that the lease was thereby terminated effective May 1, 1967, . . ." (Emphasis added.).

Piskorowski's challenge to the propriety of the Summary Judgment granted Shell is focused only on finding of fact number 2; he contends that a genuine issue of material fact existed with respect to whether the parties intended the termination provisions to vest Shell with the unilateral power to terminate the lease "at any time."

The arguments tendered by Piskorowski in support of his allegation are generally premised on the fact that Article 13 of the lease agreement, wherein Shell's capacity to terminate the lease was defined, was drafted by Shell and offered to him as part of a standardized form contract used by the company. Article 13 reads in its entirety:

"13. *Termination-Abatement.* If, without Shell's fault, the operation on the premises of an automobile service station becomes illegal or is prevented or substantially impaired for more than ninety (90) days by any act or omission of any governmental authority, or by the closing, relocation, change of grade or alteration of, or rerouting of traffic on or away from, any street or highway adjoining the premises, or by the deprivation or limitation of any access thereto or therefrom; or if all or any part of the premises is acquired or taken for public or quasi-public use as a result of negotiation or a condemnation proceeding: Shell may terminate this Lease by giving Lessor at least thirty (30) days' notice; provided that, in the event of any such acquisition or taking, such notice may be given at any time not later than ninety (90) days after physical possession of the premises is taken or the judgment in the condemnation proceeding becomes final, whichever occurs later; and if the taking is total, the rent shall immediately abate, or if only partial but sufficient, in Shell's judgment, to prevent or substantially impair operation of the service station as then located on the premises, the rent shall abate when physical possession of the premises is taken. Neither the existence nor Shell's exercise of any right under this Lease to terminate, nor any abatement of rent, shall waive, limit or affect in any way Shell's rights, then accrued or thereafter to accrue, in any proceeding, settlement or award for condemnation or for damages resulting from any other of the events specified in this article. *Shell may terminate this Lease at any time by giving Lessor at least ninety (90) days' notice.*" (Emphasis added.).

Described in Article 13 are two avenues by which Shell could terminate the lease. Detailed within the bulk of the article are the notice requirements and the rent abatement scheme which Shell could invoke if, due to the occurrence of an enumerated contingency (e. g., street closing), use of the premises as a service station facility was impaired. Within the final sentence of the article, Shell was provided with a second option—to terminate the lease "at any time", so long as ninety day notice was given to lessor Piskorowski. The Summary Judgment granted Shell was expressly based on the termination provisions contained in the final sentence of Article 13.

Piskorowski maintains that the intention of the parties with respect to Shell's termination powers cannot be gleaned from a literal reading of Article 13. He argues that Shell's inclusion of the unconditional termination proviso in a single sentence at the close of the article, which was otherwise devoted to *conditional* termination powers and procedures, rendered the article misleading, confusing, and ambiguous. He contends that it cannot be unequivocally ascertained whether the parties intended a literal application of the final sentence, or instead meant that the powers described in the final sentence were subject to the conditions enumerated in the preceding portions of the article. This ambiguity, according to Piskorowski, created a genuine issue of fact which rendered summary judgment inappropriate.

 If Piskorowski's characterization of Article 13 as "ambiguous" is correct, summary judgment was clearly inappropriate; when an ambiguity exists in a contract, the intention of the parties is a question for the jury to decide. *Wilson v. Kauffman* (1973), 156 Ind.App. 307, 296 N.E.2d 432, 437. Where no ambiguity is found in a contract, however, its construction is a matter of law to be determined by the court. *Id.*

 A contract is ambiguous if reasonable men would find its terms susceptible to more than one interpretation. *Tastee-Freez Leasing Corp. v. Milwid* (1977),

Ind.App., 365 N.E.2d 1388, 1390; *Myers v. Maris* (1975), 164 Ind.App. 34, 326 N.E.2d 577, 581. If the intention of the parties can be gleaned from their written expression of it, however, that intention must be effectuated by the .court, for that is the primary and overriding purpose of contract law—to ascertain and give effect to the intentions of the parties. *Walb Construction Co. v. Chipman* (1931), 202 Ind. 434, 175 N.E. 132, 134; *Fort Wayne Bank Bldg., Inc. v. Bank Bldg. & Eq. Corp.* (1974), 160 Ind.App. 26, 309 N.E.2d 464, 467. As the Court explained in *McClain's Estate v. McClain* (1962), 133 Ind.App. 645, 655–56, 183 N.E.2d 842, 847–48:

> " 'It is not the purpose of the law to abrogate the terms and provisions of contracts by construction where the language is clear and unambiguous but rather to enforce it as entered into by the parties. This rule is more precisely [stated] in *Gaw v. LaPorte Corp.* (1956), 126 Ind.App. 143, 130 N.E.2d 790 as follows:
>> "A court is not at liberty to revise a contract while professing to construe it. Neither does it have the right to make a contract for the parties, that is, a contract different from that actually entered into by them, . . . ." ' "

These constraints upon the courts serve to protect the sanctity of contractual relationships; individual parties to a contract must retain the right to define their mutual rights and obligations as they deem proper. *Prudential Insurance Co. of America v. Lancaster* (1966), 139 Ind.App. 292, 219 N.E.2d 607, 609; *New Harmony Realty Corp. v. Superior Oil Co.* (1941), 108 Ind. App. 668, 31 N.E.2d 673, 677. Consequently, where no defect is alleged to have occurred in the formation of a contract, its terms, if unambiguous, are conclusive upon the question of the parties' intentions. *Fort Wayne Bank Bldg., Inc. v. Bank Bldg. & Eq. Corp., supra,* at 468.

 When confronted with a dispute concerning the meaning of a written contract, a court must first examine the contract to determine whether its terms are ambiguous. *Tastee-Freez Leasing Corp. v.*

*Milwid, supra,* at 1390. The resolution of that question generally involves the application of two principles of contract construction:

(1) "It is everywhere agreed that words used in a contract are to be given their usual and common meaning unless, from the entire contract and the subject-matter thereof, it is clear that some other meaning was intended. . . ."

*Haworth v. Hubbard* (1942), 220 Ind. 611, 44 N.E.2d 967, 968.

(2) "It is well settled that words, phrases, sentences, paragraphs . . . of a contract cannot be read alone. . . . The intention of the parties must be gathered from the entire contract. . . ."

*Ahlborn v. City of Hammond* (1953), 232 Ind. 12, 111 N.E.2d 70, 73.

■ Here, Piskorowski does not suggest that the final sentence of Article 13 is facially ambiguous. Indeed, the language contained therein—"Shell may terminate this lease *at any time* by giving Lessor [Piskorowski] at least ninety (90) days notice" (emphasis added)—unequivocally indicates that Shell was empowered to unilaterally terminate the lease whenever and for whatever reason it desired, so long as proper notice was given to Piskorowski.

Rather, Piskorowski urges that an examination of the interrelationship between the final sentence of Article 13 and other contractual provisions reveals that the parties did not intend a literal application of the phrase "at any time." In support thereof, he specifically argues (1) that the preceding portions of Article 13 are rendered meaningless by a literal application of the final sentence, and (2) that the phrase "with certain options in Shell to terminate the same [lease]", which was contained in a memorandum attached to the lease by the parties, reveals certain "conditions precedent" were necessary to the exercise of Shell's termination powers. Those conditions precedent, Piskorowski maintains, were the various contingencies outlined in the preceding portions of Article 13.

We reject the contention that a literal application of the final sentence of Article 13 renders the preceding portions of that article meaningless. It is true that insofar as Shell's ultimate ability to terminate the lease was concerned, the unfettered termination power established by the proviso "at any time" made the various conditions theretofore enumerated irrelevant. Different notice conditions, however, were imposed on Shell's conditional and unconditional termination powers. Pursuant to Article 13, Shell could terminate the lease without reason at any time so long as Piskorowski was given "at least ninety days notice"; upon the happening of an enumerated contingency, however, Shell could terminate the lease with only "thirty (30) days notice" to Piskorowski. To construe Article 13 otherwise would render the differing notice provisions meaningless, a result precluded by rules of contract construction. *University Casework Systems, Inc. v. Bahre* (1977), Ind.App., 362 N.E.2d 155, 160. Consequently, it cannot be said that the final sentence of Article 13, when applied literally, renders the preceding portions of the article meaningless.

Nor do we agree with Piskorowski's bald assertion that the phrase "with certain options in Shell to terminate" the lease, which was included in a memorandum attached to the contract, indicate the parties did not intend to vest Shell with unconditional terminations powers. The common meaning of "options" is "choices" or "alternatives"[5]; the fact that Shell enjoyed "options" to terminate the lease in no way indicates that its termination powers were conditional. If the phrase "options in Shell to terminate" indicates anything, it is that Shell enjoyed more than one type of termination power— i. e., both conditional and unconditional. Consequently, Piskorowski's reliance on the phrase is misplaced; it undermines rather than supports his position.

Piskorowski's assertions regarding the interrelationship of contractual provisions do

---

5. Webster's Third New International Dictionary p. 1585 (1970).

not sustain his claim that the parties did not intend a literal application of the final sentence of Article 13. Inasmuch as the terms contained therein are facially unambiguous, it cannot be said that any ambiguity existed in the written lease agreement, insofar as Shell's termination was concerned.

■ Various other arguments tendered by Piskorowski in support of his claim that summary judgment was inappropriate were premised on the supposition that the lease agreement was ambiguous; in view of our determination that the written contract lacked the alleged ambiguity, those arguments collapse. For instance, he has attacked the propriety of summary judgment on the basis of statements contained in his attorney's affidavit, which was filed in opposition to Shell's Motion for Summary Judgment. Therein, his attorney Dominic P. Sevald stated his belief that the termination provisions contained in the final sentence could be exercised only "upon happening of the events . . . specified in said Article 13." Due to the lack of ambiguity in the contract, however, Sevald's interpretation was irrelevant. As Judge Hoffman explained in *Fort Wayne Bank Bldg., Inc. v. Bank Bldg. & Eq. Corp.* (1974), 160 Ind.App. 26, 309 N.E.2d 464, 467:

> "Furthermore, if the meaning of a contract is clear and unambiguous on its face, its effect will not be controlled by an erroneous construction placed on the agreement by the parties. This is because such extrinsic evidence may not be considered where no ambiguity exists in the contract. *Walb Construction Co. v. Chipman, supra* ; *Morris v. Thomas* (1877), 57 Ind. 316; *Smith v. Mercer* (1948), 118 Ind.App. 575, 79 N.E.2d 772."

■ Similarly, judicial rules for the construction of ambiguous written contracts are of no consequence when a court is confronted with an unambiguous agreement. It is true, as Piskorowski has argued, that the terms of a written contract are to be construed against the author of the document. *Rahn v. School City of Gary*

(1940), 216 Ind. 542, 25 N.E.2d 441, 442; *McMahan Constr. Co. v. Wegehoft* (1976), Ind.App., 354 N.E.2d 278, 282. Where no ambiguity exists, however, a court does not *construe* the contract; rather, it merely *applies* its provisions, so long as that can be accomplished without violating legal principles. *Fort Wayne Bank Bldg., Inc. v. Bank Bldg. & Eq. Corp., supra*, 309 N.E.2d at 467. Consequently, it matters not who authored an unambiguous document, insofar as the meaning of its terms are concerned. For this same reason, Piskorowski's reliance on *Komisarow v. Lansky* (1966), 139 Ind.App. 351, 219 N.E.2d 913 for the proposition that a contract will be construed to avoid an interpretation that gives an unreasonable or unfair advantage to either party is without merit. That rule of contract construction cannot be implemented by a court when no room for construction is present. It is not the province of the courts to rewrite contracts for parties; rather, it is our duty to enforce the unambiguously stated intentions of the parties, absent assertions that the formation of the contract was somehow defective. *Reed et al. v. Lewis* (1881), 74 Ind. 433, 439; *Fort Wayne Bank Bldg., Inc. v. Bank Bldg. & Eq. Corp., supra*, 309 N.E.2d at 468.

■ In the latter respect, Piskorowski has challenged the summary judgment granted Shell on the basis that factual questions existed with regard to the legality of the lease agreement. Those disputes, he maintains, concerned (1) whether he was precluded from exercising a "meaningful choice" in the formation of the contract by virtue of the disparity of bargaining power which existed between himself and Shell, and (2) whether a literal application of the termination provisions results in an unconscionable and oppressive contract. Underlying Piskorowski's concomitant assertions is the principle established in *Weaver v. American Oil Co.* (1971), 257 Ind. 458, 276 N.E.2d 144, 49 A.L.R.3d 306 that an unconscionable contract—one which contains unreasonable or unknown terms *and* is the

product of inequality of bargaining power [6] —is unenforceable. *See also Williams v. Walker-Thomas Furniture Co.* (D.C.1965), 350 F.2d 445.

Piskorowski has waived the right to raise the issue of illegality before this Court, however. Illegality, we note, is among those matters which must be especially pleaded. TR. 8(C). In his complaints, Piskorowski did not assert that the unconscionable nature of the lease agreement rendered it unenforceable. Rather, he alleged only that Shell had breached the terms of the contract. Nor did he exercise the opportunity to interpose the question of the contract's illegality in opposition to Shell's Motion for Summary Judgment; that avenue was open to Piskorowski by virtue of the fact that the parties had not yet submitted the cause to a pre-trial conference and order, the final step in the process of issue formulation. *Schafer v. Buckeye U. Ins. Co.* (1978), Ind.App., 381 N.E.2d 519, 521.[7] Nor was the question of the alleged illegality of the lease agreement raised in Piskorowski's Motion to Correct Errors, as required by TR. 59. Consequently, he cannot now raise the issue here. *Decker v. State* (1979), Ind.App., 386 N.E.2d 192, 205; *Ahnert v. Wildman* (1978), Ind. App., 376 N.E.2d 1182, 1189.

Affirmed.

GARRARD, P. J., and HOFFMAN, J., concur.

---

6. We emphasize the interdependent nature of Piskorowski's assertions. Contracts subject to the common law, as here, are not unenforceable merely because, under the terms of the agreement, one party enjoys advantages over another. *See Weaver v. American Oil Co., supra,* and *Williams v. Walker-Thomas Furniture Co., supra.*

7. As explained in *Schafer v. Buckeye U. Ins. Co., supra,* the fact that the issues have not reached the final stage in the formulation process does not "*per se* preclude a court from properly granting summary judgment." The propriety of summary judgment depends simply on the matters that "are actually put before the court." *Id.*